James V. Bashian
LAW OFFICES OF JAMES V. BASHIAN, P.C.
70 Adams Street, 4th Floor
Hoboken, New Jersey 07030
Tel.# (973) 227-6330

Andrew D. Friedman
GLANCY BINKOW & GOLDBERG LLP
430 Park Avenue, Suite 702
New York, New York 10022
Tel.# (212) 308-6300
Attorneys for Plaintiff

[Additional Plaintiff's Counsel on Signature Page]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
===================================X
                                   :
HAROLD OSHINSKY, Individually, and :   CLASS ACTION COMPLAINT
On Behalf of a Class of Similarly  :
Situated Persons,                  :   Civil Action No.
                                   :   09 CV ____
                    Plaintiff,     :
                                   :
          - against -              :
                                   :   JURY TRIAL DEMANDED
NEW YORK FOOTBALL GIANTS,          :
INC., GIANTS STADIUM LLC, NEW YORK :
JETS LLC, JETS STADIUM DEVELOPMENT :
LLC, and NEW MEADOWLANDS STADIUM   :
COMPANY, LLC;                      :
                                   :
                    Defendants.    :
                                   :   ELECTRONICALLY FILED
===================================X
```

Plaintiff Harold Oshinsky (hereinafter "Plaintiff"), by

his attorneys, brings this civil action asserting claims under

the New Jersey Consumer Fraud Act and several substantially similar state consumer protection statutes, state common law and the federal antitrust laws, on behalf of himself and a class, defined below, consisting of all persons and entities who purchased one or more Season Tickets (defined below) to attend the 10 pre-season and regular season National Football League ("NFL") games played by the New York Jets and/or New York Giants professional football teams in 2008 at Giants Stadium in East Rutherford, New Jersey and are being, and/or have been, forced to purchase a personal seat license ("PSL") as a mandatory condition for the purchase of a Season Ticket to attend the NFL football games that will be played by the Jets and/or by the Giants at the New Meadowlands Stadium that is currently under construction in East Rutherford, New Jersey ("NMS" or "New Stadium") in 2010 and each year thereafter.  Plaintiff alleges upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters based upon, <u>inter alia</u>, the investigations conducted by Plaintiff and his attorneys, as follows.

## **INTRODUCTION**

1.   This is a class action asserting claims under several similar state consumer protection statutes modeled after the Federal Trade Commission Act, such as the New Jersey Consumer Fraud Act and Connecticut Unfair Trade Practices Act

(collectively referred to herein as the "State Consumer Protection Acts"),[1] the federal antitrust laws, and state common law arising out of agreements entered into, and actions taken, by the Defendants - - owners and affiliates of the New York Giants and New York Jets professional football teams - - to jointly build and operate NMS, the only stadium in the New York City metropolitan area with a seating capacity in excess of 75,000, and to finance several hundred million dollars of the cost to build the New Stadium by creating personal seat licenses with unfair and onerous provisions and requiring Plaintiff and members of the Class to purchase a PSL as a mandatory condition for being able to purchase a Season Ticket to attend the home games played by the Jets or Giants in the 2010 NFL Season and thereafter.

2.   Plaintiff seeks to represent the proposed Class and two sub-classes (defined below) of persons who were, and are being, injured by Defendants' unconscionable business practices and anti-competitive acts and agreements pursuant to which Defendants have, <u>inter alia</u>:

---

[1]   <u>See</u>, <u>e.g.</u>, New Jersey Consumer Fraud Act, §§ 56:8-1, <u>et</u> <u>seq.</u> ("NJCFA"); New York General Business Law §§ 349, 350 (New York); Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a, 42-110b (Connecticut); Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), F.S.A. § 501.201 <u>et.</u> <u>seq.</u> (Florida); Cal. Bus. & Prof. Code § 17200 <u>et.</u> <u>seq.</u> (California) and Pennsylvania Unfair Trade Practices and Consumer Protection Act ("PUTPCPA"), 73 P.S. §§ 201-2, <u>et.</u> <u>seq.</u> (Pennsylvania).

(A)   announced the termination of the contractual rights and expectations of Class Members who purchase Season Tickets to attend all home games played by the Jets or Giants during the 2009 NFL season (a "2009 Season Ticket") to be able to purchase Season Tickets for the 2010 NFL Season and successive NFL Seasons each year thereafter ("Renewal Rights") without any compensation to be provided to the Plaintiff and members of the Class;

(B) created PSLs with unfair contractual terms, including illegal forfeiture provisions that enable Defendants to confiscate PSLs purchased by Class Members, without any obligation to provide compensation for such confiscated PSLs, in the event that the Class Members do not purchase and pay for a Season Ticket for all home games played by the Jets or Giants during the 2010 NFL season (a "2010 Season Ticket") at the prices, and by the dates, that have been set by Defendants and then continue to purchase a new Season Ticket each and every year thereafter, through at least 2025 and most likely through 2040 or longer, at whatever prices are set by the Defendants in the future;

(C)   coerced Plaintiff and the Class to agree to purchase PSLs by, (i) interfering with, and unilaterally terminating, Plaintiff's and the Class Members' contractual

Renewal Rights, and (ii) tying the purchase of a PSL to the
purchase of a 2010 Season Ticket;

(D)  fixed the prices for PSLs and 2010 Season Tickets
at artificial, supra-competitive prices that were established by
Defendants to maximize near term revenue and profits in order to
enable them to repay short-term loans that were jointly obtained
from the NFL to finance a large portion of the up-front costs of
demolishing Giants Stadium and building NMS; and

(E)  erected barriers to competition in the markets for
several products sold by Defendants within the 30-mile radius of
New York, New York (the "N.Y. Metropolitan Area") so as to reduce
or eliminate competition in such markets, which include the local
markets for, (i) the rental of arenas with a seating capacity in
excess of 75,000 people (a "large-capacity facility"); (ii) the
sale of tickets to large-scale theatrical, musical, sporting, and
other types of events that are required to be, and are, staged at
large-capacity facilities ("large-scale events"); and (iii) the
sale of leases for luxury suites in spectator arenas in the N.Y.
Metropolitan Area.

3.  As alleged herein, Defendants' conduct gives rise
to Plaintiff's claims for: (A) violations of the State Consumer
Protection Acts including all Consumer Protection Acts adopted
by, and existing in, the states where Plaintiff and the vast

majority of all Class Members reside;[2] (B) violations of Section 1 of the Sherman Act and Sections 4 and 16 of the Clayton Act; (C) breach of contract; (D) tortious interference with contractual rights and expectations; (E) unjust enrichment; (F) declaratory relief pursuant to 28 U.S.C. § 2201; and (G) injunctive relief.

4.    Plaintiff contends that Defendants - - owners and affiliates of the only two professional football teams authorized by the NFL to play their home games in the N.Y. Metropolitan Area - - have improperly leveraged their monopolies and their control over the market for Season Tickets to attend NFL football games played in the N.Y. Metropolitan Area in order to, _inter alia_, (A) force Class Members to pay for the costs of building the New Meadowlands Stadium by creating PSL contracts with unfair terms, including unconscionable forfeiture provisions, and tying the purchase of such PSL contracts to the purchase of 2010 Season Tickets; and (B) establish, fix and maintain prices for Season Tickets in each year after 2010 at artificial, supra-competitive levels by contractually requiring Class Members who purchase a PSL to agree to, (i) continue to purchase Season Tickets each and every year thereafter, at whatever prices are set by Defendants, and (ii) allow Defendants to confiscate the PSL without having to

---

[2]    _I.e._, New Jersey, New York, Pennsylvania, Connecticut, Florida and California.

provide any compensation whatsoever to the PSL owner in the event that the Class Member is unwilling or unable to purchase Season Tickets in any given year at the prices established by Defendants.

5.    In sum, Defendants are commercial entities with control over 100% of a unique product market, with very high (and virtually impenetrable) barriers to entry, that have entered into agreements, contracts and conspiracies to leverage their monopoly power and/or dominant control over that market to create and sell an unnecessary and unwanted product, at artificial supra-competitive prices, by tying the purchase of this unwanted product to the purchase of the product for which they are the only suppliers and sellers in the N.Y. Metropolitan Area.

6.    The illegality of Defendants' alleged conduct can be illustrated by analogy to similar hypothetical contracts and agreements between a local cable company and telephone company that are the only two suppliers of high-speed broadband internet access for a particular geographic area.  Pursuant to these hypothetical contracts, the two companies agree to form a joint venture to develop a state-of-the-art universal modem for DSL and cable broadband signals and to finance their costs by, <u>first</u>, creating a new product - - a Broadband Subscription License ("BSL") that would provide the purchaser with the contractual right <u>and</u> <u>contractual</u> <u>obligation</u> to purchase either high-speed

DSL or cable broadband internet access for the next 15 years at whatever rates the cable and telephone companies decide to charge their customers in the future, and <u>then</u>, forcing all of their respective high-speed broadband internet subscribers to purchase a BSL, at a price of $5,000-$20,000, as a mandatory requirement to be able to continue to purchase either DSL or cable broadband internet service for their home or office in that geographic area. Furthermore, like the Defendants' PSL, the hypothetical BSL would be subject to forfeiture, without any remuneration, in the event that the BSL owner is unable to, or does not, pay for his or her monthly broadband internet services at whatever prices are set by the two companies in the future.

      7.   Agreements, conduct and unconscionable business practices, such as that described in the preceding paragraph and throughout this Complaint, engaged in by companies that collectively control 100% of the supply and sales of a unique product in a local market with high barriers to entry would, rightfully, create public outrage and an outcry for the courts to enjoin such illegal conduct and require the companies to compensate their customers for the harm caused therefrom. The wrongful agreements, acts and practices alleged in this Complaint are essentially identical to the hypothetical agreements, acts and practices alleged in the preceding paragraph, with the only differences being the nature of the unique products sold by the

commercial entities that entered into such illegal agreements, and the overall number of people who were, and are being, harmed by the companies' unconscionable business practices and anti-competitive actions.

8.    It is only because Defendants control 100% of the sales in their particular product market (i.e., the market for the sale of Season Tickets for NFL football games played in the N.Y. Metropolitan Area), that they are able to unfairly and illegally leverage that control to, (a) create PSLs that provide the owner with the "right" to purchase their products, and (b) sell PSLs by tying their purchase to the purchase of the desired product for which they are the only producers and sellers (i.e., Season Tickets). In addition, in order to create and sell PSLs, the Defendants first had to unfairly and illegally terminate the Renewal Rights that have been held and exercised by Plaintiff and members of the Class over the course of more than 25 consecutive years.  Moreover, Defendants have announced that the Class' Renewal Rights will be terminated/confiscated without the payment of any compensation to Plaintiff and the members of the Class so that Defendants may include such rights as the primary consideration of  the PSL agreements that they then put up for sale, and coerce Plaintiff and the Class to purchase, as a separate product sold at prices ranging from $1,000 to up to $25,000 per PSL.

9.     Defendants' anti-competitive agreements, wrongful conduct and unconscionable commercial practices have caused Plaintiff and the Class to incur substantial monetary damages, and will continue to cause injury to the Class without the equitable relief sought in this Complaint.  Accordingly, Plaintiff, individually and on behalf of the Class, seeks various forms of declaratory, equitable and injunctive relief and treble damages against the Defendants named herein - - including, <u>inter alia</u>, compensation for the value of the Class' Renewal Rights that are terminated and sold by Defendants at a profit as part of PSLs; elimination or revision of onerous forfeiture provisions imposed in the terms of the PSL agreements; requirements that Defendants mitigate damages in the event that Defendants are permitted to, and do, confiscate PSLs from purchasers of PSLs who are unwilling or unable to purchase Season Tickets in any given year; establishment of a right of redemption that permits PSL owners to redeem their PSLs for fair market value or a form of appraisal rights; imposition of limitations on the amounts or percentages that the prices charged for Season Tickets may be increased from one year to the next; and/or the imposition of a prohibition on the further sales of PSLs - - as well as attorneys' fees, filing fees and other costs of the litigation of Plaintiff's and the Class' federal and state law claims.

## SUMMARY OF FACTS AND CLAIMS

10.  The Jets and Giants are the only two NFL football teams that are permitted under NFL rules and regulations to play their home games in the N.Y. Metropolitan Area.  Because current demand for tickets to attend their home games exceeds supply, the Jets and Giants, unlike most other sports franchises, do not sell tickets for individual games to public consumers.  Rather, both teams currently only sell Season Tickets.

11.  A Season Ticket is a bundled group of tickets that provides the purchaser with a ticket for a particular seat for each and every football game played by an NFL member club in its home stadium during an annual NFL season (which currently consists of 10 individual tickets to attend each of the 2 pre-season games and 8 regular season "home" games played by the team).  The Season Tickets that have been sold by defendant New York Football Giants, Inc. ("Giants") and defendant New York Jets LLC ("Jets") over the past 24 years have provided the purchaser with both: (A) a bundle of tickets for a particular seat for every game played by the team during an NFL season, and (B) a contractual Renewal Right enabling the Season Ticket Holder to purchase a Season Ticket for the following NFL season when such Season Tickets are offered for sale by the team several months prior to the start of the following NFL pre-season.

12.　In the early 2000s, the Giants Defendants entered into negotiations with the State of New Jersy to either complete major renovations to Giants Stadium or build a new stadium in the Meadowlands Sports Complex in East Rutherford New Jersey.　During this time, the the Jets Defendants entered into negotiations with various public and private entities to build a competing large capacity stadium in New York, New York.　However, in the Fall of 2005, the Defendants entered into a series of agreements pursuant to which, among other things, the Jets Defendants agreed to abandon their plans to build a competing stadium, and to instead, jointly build, jointly finance and pay for the building costs, and jointly operate, a single large capacity facility in the New York Metropolitan Area, _i.e.,_ the New Meadowlands Stadium.

13.　The Plaintiff is a long-time purchaser of several Season Tickets for the NFL football games that have been played annually by both the Jets and Giants at Giants Stadium since 1984.

14.　In May 2008, Plaintiff exercised his Renewal Rights and purchased six (6) Season Tickets from the Giants Defendants that provided Plaintiff with tickets for 6 contiguous seats, located in Section 130, Row 8 (seats 21-26), in the lower tier near mid-field at Giants Stadium for every home game played by the Giants in 2008, and four (4) Season Tickets from the Jets Defendants that provided Plaintiff with tickets for 4 contiguous

seats, located in Section 131, Row 20 (seats 5-8), in the lower tier near mid-field at Giants Stadium for every home game played there by the Jets in 2008.

15.   On or about July 21, 2008, Plaintiff and all other persons who had purchased 2008 Season Tickets to attend games played by the Giants in the N.Y Metropolitan Area (the "Giants Tickets Sub-Class") were informed by the Giants and defendant Giants Stadium LLC ("GS" and collectively, the "Giants Defendants") that they had unilaterally decided to terminate the Renewal Rights of all members of the Giants Tickets Sub-Class and that all such Giants Tickets Sub-Class Members would not be permitted to purchase a Season Ticket for a seat(s) located in a section of the New Meadowlands Stadium that is similar to the location of their current seats at Giants Stadium, and would not be permitted to continue to purchase Season Tickets at all after the 2009 NFL Season, unless they now agreed to purchase, and pay for, one PSL for each Season Ticket at prices ranging from $1,000 to $20,000 per PSL.  Plaintiff and the Giants Tickets Sub-Class Members were also told by the Giants Defendants that even if they were willing to purchase a 2010 Season Ticket for a seat in a location vis-à-vis the playing field at NMS that is inferior to their current seat location at Giants Stadium, they still would be required to purchase one PSL for each such Season Ticket.

16.    Similarly, on or about August 26, 2008, Plaintiff and all Class Members who had purchased 2008 Season Tickets to attend games played by the Jets in seats located in the lower tier of Giants Stadium ("Jets Tickets Sub-Class") were sent a letter from the Jets and defendant Jets Stadium Development LLC ("JSD" and collectively, the "Jets Defendants") advising them that the Jets Defendants had unilaterally decided to terminate the Renewal Rights of all members of the Jets Tickets Sub-Class and that they would not be permitted to purchase a Season Ticket for a seat in the lower tier of NMS unless they now agreed to purchase, and pay for, one PSL for each such Season Ticket at prices ranging from $5,000 to $25,000 per PSL.  Alternatively, Plaintiff and the Jets Tickets Sub-Class Members could agree to be placed on a list of persons who could be offered an opportunity to purchase Season Tickets for Jets games to be played at the NMS in 2010 for one or more of the 27,000 seats located in the "Upper Bowl" of the NMS without having to purchase PSLs for those seats.  Presumably, Season Tickets for seats in the upper bowl of NMS will continue to include Renewal Rights but are strictly limited to 27,000 seats in locations at NMS relative to the field of play that are clearly inferior to the location of the Jets Tickets Sub-Class Members' current seats at Giants Stadium and will only be made available based on the seniority of

the Class Members (<u>i.e.</u>, the length of time that they have been Jets Season Ticket Holders).

17.  As set forth in the written brochures and internet websites prepared and published by the Defendants, including a form "Personal Seat License Agreement" prepared and published on the internet by the Jets Defendants, each PSL that Plaintiff and the Class have been, and are being, coerced to purchase in order to continue to purchase Season Tickets for the 2010 NFL Season and beyond, will operate as a binding contract between the Class Member/purchaser and Defendant JSD or Defendant GS. Pursuant to these PSL contracts, the Class Member will receive: (A) a new form of renewal "right" to purchase a Season Ticket for the Jets' games or Giants' games played at NMS pursuant to which the Class Member is forced to agree to be contractually bound to purchase a Season Ticket (and tickets to playoff games held at NMS, if any) in 2010 and in every year thereafter until the team no longer plays its home games at NMS; (B) the right/option (but not the obligation) to purchase tickets for certain large-scale theatrical, musical and sporting events held at NMS; and (C) the right/option (but not the obligation) to purchase a contract that permits the owner to park in certain preferred parking areas at NMS.

18.  Unlike Renewal Rights, which are true "option contracts" that provide Class Members with the option, but not

the obligation, to purchase a Season Ticket for each following NFL season, the newly-created renewal requirement that Defendants are imposing as a term in every PSL contract requires the purchaser of a PSL to also purchase a Season Ticket by a set date in 2010, and in every successive year thereafter that the Jets or Giants continue to play their home games in NMS, at whatever supra-competitive price that the Defendants may decide to charge for the Season Ticket in each year after the 2010 NFL season.

19. As part of the one-sided "default" provisions that the Jets Defendants and Giants Defendants are imposing in each PSL agreement, the Class Member/purchaser of a PSL is required to contractually agree that in the event that they are unwilling, or unable, to purchase a Season Ticket in any given year over the next 13-25 or more years, at whatever prices (and by whatever date) that will be set each year by the Jets Defendants and Giants Defendants, then the Defendants: (A) will be permitted to transfer the PSL and all rights attached thereto to Defendants JSD or GS; (B) will not be required to provide the Class Member with the fair market value, or any compensation whatsoever, for the PSL that is forfeited to Defendant JSD or GS; and (C) will be permitted to sell the forfeited PSL and all rights attached thereto, and to retain all proceeds received from such sales, without any obligation to pay any portion of the sales proceeds to the Class Member/purchaser of the PSL. These unconscionable

contractual provisions, which are set forth in Section 9 of the form PSL Agreement published on the Jets Defendants' websites and summarized in the Frequently Asked Questions (FAQ) sections of both the Jets Defendants' and Giants Defendants' websites, are referred to herein as the "Forfeiture Provisions."

20. Plaintiff and the members of the Class have been, and are being, improperly coerced into buying PSLs (with unfair and unconscionable contractual terms) that Plaintiff and the Class would not otherwise desire, and would not otherwise purchase, at artificially established, fixed, supra-competitive prices resulting from Defendants' schemes, contracts, combinations and conspiracies that are alleged herein.

21. The Defendants identified herein are alleged to have engaged in acts, and entered into anti-competitive agreements, to, inter alia, (A) tie the purchase of a desired product for which they control 100% of the market (i.e., Season Tickets to attend NFL football games played in the N.Y. Metropolitan Area) to the purchase of an undesirable and unwanted product (i.e., a PSL); (B) establish, fix and maintain prices for PSLs and Season Tickets for the 2010 NFL season and future NFL seasons at artificial, supra-competitive levels; (C) use and employ unconscionable commercial practices (as well as deception, fraud, misrepresentations and/or knowingly concealed or omitted material facts with intent that others rely upon such concealment

17

or omission), in connection with the marketing, promotion and sale of PSLs to Class Members; (D) terminate the Class' valuable Renewal Rights and breach their existing contracts with Plaintiff and the Class; and (E) unjustly enrich themselves by confiscating valuable contractual and property rights belonging to Plaintiff and the Class without providing any consideration therefore.

22. By their acts, conduct, conspiracies and agreements, Defendants are alleged to have, (A) violated Section 8-2 of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 <u>et seq.</u>, and similar provisions contained in all State Consumer Protection Acts; (B) restrained trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 22; and (C) breached contractual agreements with, and interfered with the contractual rights and expectations of, the Plaintiff and the Class in violation of state common law. Accordingly, this Complaint seeks to, among other things, enjoin the Defendants' unlawful, anti-competitive and unconscionable conduct, provide equitable relief to the Class, and compensate the Class for the injuries sustained as a result of such unlawful conduct.

## **THE PARTIES**

23. Plaintiff Harold Oshinsky is a resident of the State of Florida. Every year, for the past 24 years, Plaintiff has purchased six (6) Season Tickets for seats located in Section

18

130, Row 8, Seats 21-26, in the lower tier, near the mid-field area, at Giants Stadium for home games played by the Giants. Plaintiff has also purchased four (4) Season Tickets for seats located in Section 131, Row 20, Seats 5-8 in the lower tier, near mid-field area at Giants Stadium for games played by the Jets.

24.  Defendant New York Jets LLC ("Jets"), a Delaware limited liability company, owns and operates the New York Jets professional football team, which is a member club of the National Football League.  Defendant Jets has its principal place of business in New York, New York.

25.  Defendant Jets Stadium Development LLC ("JSD"), a Delaware limited liability company, is an affiliate of defendant New York Jets LLC and is the entity originally formed to develop and operate a new stadium with over 80,000 seats that the Jets Defendants had planned to build in New York City (the "Jets Stadium" or "NY Sports Convention Center").  Defendant JSD maintains offices in New York, New York and Florham Park, New Jersey.  In or about September 2005, shortly after the Jets Defendants' abandoned efforts to build and operate their own large-capacity facility in the N.Y. Metropolitan Area, the Jets Defendants entered into the illegal agreements and conspiracies described herein and Defendant JSD became the arm of the Jets' organization charged with overseeing the development and operation of the New Meadowlands Stadium.

26.   Defendant New York Football Giants, Inc. ("Giants"), a New York corporation, owns and operates the New York Giants professional football team, which is a member club of the NFL.  Defendant Giants has its principal place of business in East Rutherford, New Jersey.

27.   Defendant Giants Stadium, LLC ("GS"), a Delaware limited liability company with its principal place of business in East Rutherford, New Jersey, is an affiliate of the Giants and the arm of the Giants' organization overseeing the development and operation of the New Meadowlands Stadium.

28.   Defendant New Meadowlands Stadium Company, LLC ("NMSCO" or the "Joint Venture"), a Delaware limited liability company with its principal place of business in East Rutherford, New Jersey, is a joint venture that is wholly owned and/or controlled by the Jets Defendants and Giants Defendants through the equal (i.e., 50-50) ownership of the equity of NMSCO by Defendants JSD and GS.  Defendant New Meadowlands Stadium Company LLC is the entity that is in charge of the development, construction and the operation of the 82,500-seat New Meadowlands Stadium that is currently under construction in East Rutherford, New Jersey and scheduled to open in 2010.

## JURISDICTION AND VENUE

29.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337 and 1367, and 15 U.S.C. §§ 1,

15, 22 and 26. The Court also has subject matter jurisdiction over this Class Action pursuant to 28 U.S.C. § 1332(d), as amended by the Class Action Fairness Act of 2005 because this is a class action involving more than 100 Class Members, some of whom are citizens of states different than the Defendants, and the amount in controversy exceeds $5 million exclusive of interest and costs. See, 28 U.S.C. § 1332(d)(2)(A).

30. Venue is proper in this District pursuant to 15 U.S.C. §§ 22 and 26, and 28 U.S.C. § 1391(b). Defendants have transacted, and continue to transact, substantial business in this District and have directly, foreseeably and substantially affected interstate commerce in the United States. Defendants are licensed to conduct business in the State of New Jersey and transact business, committed an illegal act in, maintain agents or representatives in, or are found in, this District. A substantial part of the acts giving rise to Plaintiff's claims occurred in this District, and Defendants have caused injury to Plaintiff and the members of the putative Class in this District.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on his own behalf and as a representative of a Class consisting of all persons, firms, corporations and other entities (excluding the Defendants and their respective officers, directors,

employees, parents, subsidiaries and affiliates) who purchased 2008 Season Tickets to attend NFL football games played by the Giants and/or Jets in Giants Stadium and were, and/or are being, compelled to purchase PSLs as a condition for being able to purchase 2010 Season Tickets for seat(s) in a location in NMS that is comparable to the location of their seat(s) at Giants Stadium for their 2008 Season Ticket(s)("the Class"). The Class includes two sub-classes: the Giants Tickets Sub-Class and the Jets Tickets Sub-Class.

32. In the alternative to representing the Class defined above, and pursuant to Fed. R. Civ. P. 23(c)(5), Plaintiff will seek to represent the following alternative Class:

> Similar State Law Class: All Class (and Sub-Class) Members residing in New Jersey, New York, Pennsylvania, Connecticut, Florida and California.

33. There are over 45,000 members of the Class and thus, the Class is so numerous that joinder of all Class members in this action is impracticable. The alternative Similar State Law Class is likewise sufficiently large to make joinder impracticable. In addition, each of the Sub-Classes consist of more than 17,000 members and thus, each Sub-Class is so numerous that joinder of all Sub-Class Members is impracticable.

34. Disposition of the Plaintiff's and Class' claims in a class action will provide substantial benefits to both the parties and the Court.

35.   The rights of each member of the Class and Sub-Classes were violated in a similar fashion based upon Defendants' uniform actions.

36.   Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and all Class Members were damaged, and continued to be harmed and faced with further harm, by the same wrongful conduct of the Defendants alleged herein.

37.   Plaintiff will fairly and adequately protect the interests of the Class.  The interests of the Plaintiff are coincident with, and not antagonistic to, those of the Class (and/or the Similar State Law Class).  In addition, the Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex federal antitrust and consumer class action lawsuits.

38.   Questions of law and fact common to the members of the Class, alternative Similar State Law Class, and the two Sub-Classes predominate over questions which may affect only individual members, if any, in that Defendants have acted on grounds generally applicable to the entire Class.  Among the questions of law and fact common to the Class and Sub-Classes are:

(a)  Whether Defendants' conduct and treatment of consumers was the product of deceptive, unfair and/or unconscionable business practices;

(b)  Whether Defendants' conduct and commercial practices violate the New Jersey Consumer Fraud Act and similar State Consumer Protection Acts;

(c)  Whether the alleged agreements, combinations and conspiracies violated, and/or violate, Section 1 and/or Section 2 of the Sherman Act;

(d)  Whether Defendants have entered into agreements and/or have engaged, and continue to engage, in a combination or conspiracy to raise, fix and/or maintain the prices charged for Season Tickets and PSLs at fixed, artificial and/or supra-competitive prices;

(e)  Whether Defendants and each of them was a participant in the unlawful agreements, combinations and conspiracies alleged herein and whether the agreements, combinations or conspiracies alleged herein existed or exist, whether they were, or are, unlawful; and when did such agreements or conspiracies occur and what was, and are, the effects of such alleged combinations or conspiracies on the amounts that were, or will be, paid by members of the Class for, _inter_ _alia_, Season Tickets, PSLs and tickets to attend large-scale events held at NMS;

(f)  Whether the tying of a purchase of a PSL to the purchase of a Season Ticket is unjust, unreasonable and/or unlawful;

(g)  Whether the contractual terms of the PSL agreements that Class Members are required to accept are unjust, unreasonable and/or unlawful;

(h)  Whether Defendants' conduct constitutes deceptive, unfair or oppressive conduct and/or unconscionable commercial or business practices;

(i)  Whether Defendants will be unjustly enriched by the enforcement of certain provisions in the PSL agreements;

(j)  The extent of the injuries sustained by Plaintiff and members of the Class and the appropriate type and/or measure of damages;

(k)  Whether Plaintiff and the members of the Class are entitled to declaratory, equitable and/or injunctive relief; and

(l)  Whether Plaintiff and the Class are entitled to recover treble damages, attorneys' fees and costs incurred in the litigation.

39.  Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their

common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Class treatment will also permit the adjudication of relatively small claims by many Class Members, who could not afford to individually litigate federal antitrust and state statutory claims against large, very well financed, corporate Defendants.

40.   Defendants have acted on grounds generally applicable to the entire Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole.

41.   Plaintiff knows of no difficulties that are likely to be encountered in the management of this Action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.


**INTERSTATE TRADE AND COMMERCE**

42.   The trade and commerce relevant to this Action includes the purchase and sale of, (a) Season Tickets for all NFL football games held in the N.Y. Metropolitan Area and (b) PSLs for seats in the only large capacity facility that will be located in the N.Y. Metropolitan Area.

43.   In the flow of interstate commerce, Class Members located in New York, New Jersey, Connecticut, Pennsylvania, Florida, California and throughout the United States, have purchased and continue to purchase, Season Tickets and PSLs from the Defendants.

44.   The Defendants maintain offices in New York and New Jersey and conduct substantial business in both states as well as in most, if not all, of the other 48 states of the United States.

45.   The Defendants have sold, _inter alia_, Season Tickets and PSLs to the Plaintiff and Class Members across state lines in an uninterrupted and continuous flow of interstate trade and commerce, and the Defendants have received, and continue to receive, hundreds of millions of dollars from such interstate trade and commerce.

46.   The activities of the Defendants, as described herein, were within the flow of interstate trade and commerce, had substantial effects on interstate trade and commerce, and unreasonably restrained interstate trade and commerce.

47.   Among other unreasonable restraints on interstate trade and commerce, Defendants' combination and conspiracy artificially fixed and raised the cost of Season Tickets, and artificially fixed the cost of PSLs paid by the Plaintiff and Class Members, and has deprived Plaintiff and Class Members, and

consumers in New Jersey, Florida, New York, Connecticut, Pennsylvania, California and other states, of the benefits of free and open interstate competition between and among the Defendants and other entities.

**STATEMENT OF FACTS**

**A.  Background**

48.  The Jets and Giants are the only two NFL football teams that are permitted under NFL rules and regulations to play their home games in the N.Y. Metropolitan Area.  For the past 24 years, both the Jets and Giants have played their home games at Giants Stadium in New Jersey.

49.  Because current demand for tickets to attend the NFL games played by the Jets and Giants in the New York Metropolitan Area exceeds supply, the Jets and Giants, unlike most other sports franchises, do not sell tickets for individual games to public consumers.  Rather, both teams currently only sell Season Tickets, which require the consumer to purchase tickets for all home games played by each team during an NFL pre-season and NFL regular season.

50.  Defendants annually set the prices of the Season Tickets that they sell to the public by setting the price charged for a ticket for each seat on a per game basis and then multiplying that price by the number of home games included in a Season Ticket (currently 10 games).  The only variable affecting

28

the price of the individual per game ticket is the designated area in the stadium relative to the field of play in which the seat is located. No distinctions in price are made for whether the game is in the pre-season or regular season. The most recent per game ticket prices for the 2008 NFL Season ranged from approximately $70.00 - $150.00 per ticket. Thus, a Season Ticket for the games played by the Giants or Jets in 2008 for a seat located near mid-field in the lower tier of Giants Stadium cost approximately $1,000 ($100 per ticket for each of the mandatory 10 games for which tickets must be purchased).

51. For the past several years, consumer demand for Season Tickets has greatly exceeded the supply of Season Tickets. Both teams maintain a "waiting list" of persons interested in purchasing Season Tickets as they become available when Season Ticket Holders choose not to exercise their Renewal Right and do not purchase a Season Ticket prior to the start of any given NFL football season. Prior to the announcement of the Defendants' plans to create and sell PSLs to Season Ticket holders, the Giants had a waiting list with over 150,000 people and entities and the Jets had a waiting list of over 13,500 people and entities.

**B.    2002-2006 - - The Jets Defendants and Giants Defendants
Separately Pursue Plans to Build Competing Stadiums**

52.   In and prior to 2002, the Giants Defendants
pursued negotiations with the New Jersey Sports Exposition
Authority ("NJSEA"), the state agency that owns and manages the
Meadowlands Sports Complex in East Rutherford, New Jersey, to
substantially renovate Giants Stadium and enter into a new lease
to continue to have the Giants play their home games at Giants
Stadium.

53.   During this same time, the Jets Defendants began
to pursue plans to have a competing stadium built in New York
City and thereafter engaged in extensive efforts to develop,
build and operate an 85,000-seat stadium with a retractable dome
roof on land located above the rail yards on the West Side of
Manhattan ("Jets Stadium").

54.   During 2003-2004, the Giants Defendants abandoned
their efforts to seek to have Giants Stadium renovated and
instead, entered into new negotiations with the NJSEA in an
effort to reach agreement on a new ground lease pursuant to which
Giants Stadium, which is located in the Complex, would be
demolished and the "West Site" of the Complex would be developed.
Pursuant to this new lease, the Giants Defendants agreed to
build, and thereafter operate, a new 82,000 seat stadium and a
new state-of-the-art team training facility.

55.   In pursuit of their plans to build NMS to replace
Giants Stadium, the Giants Defendants formed an entity in or
about 2004 that was called New Meadowlands Stadium Company LLC.
This entity then negotiated and entered into a ground lease with
NJSEA to thereafter build and operate NMS on the West Site of the
Meadowlands Sports Complex and to demolish Giants Stadium.

## C.   The Defendants Agree to Avoid Competition
## and Jointly Finance, Build and Operate A Single Stadium

56.   In 2005, the Jets Defendants abruptly ceased all
efforts to pursue plans to build and operate their own stadium
and entered into negotiations with the Giants Defendants (and the
NFL and NJSEA) to jointly build, finance the costs of building,
and operate NMS.

57.   In or about September 2005, Defendants entered
into several collusive, anti-competitive agreements whereby the
Jets Defendants agreed to, and did, (A) abandon all further
efforts to build and operate their own large-capacity facility in
the N.Y. Metropolitan Area to compete with NMS; (B) jointly
pursue efforts to develop, finance the building costs of, and
operate, the 82,000-seat New Meadowlands Stadium; and (C) refrain
from competing with the Giants Defendants for the sale of leases
for luxury suites, the rental of large-capacity facilities and
the sale of tickets to large-scale events in the N.Y.
Metropolitan Area.

31

58.  In or about October 2005, the Giants Defendants and Jets Defendants entered into written contracts setting forth the terms of their joint ownership and control of Defendant NMSCO, and the Joint Venture then entered into a ground lease with NJSEA for the West Site of the Meadowlands Sports Complex pursuant to which the Jets and Giants Defendants would jointly build and operate a new stadium with a capacity in excess of 80,000 people.

59.  In early 2006, at the insistence of the NJSEA, the Defendants negotiated, and Defendant NMSCO entered into, a revised ground lease agreement with the NJSEA.  Pursuant thereto, Defendants agreed that New Jersey would not be required to pay for $30 million in certain infrastructure costs in exchange for the NJSEA's agreement to drop its insistence that the Defendants build an indoor-outdoor stadium with a retractable dome roof.

60.  The ground lease with NJSEA, and the two related sub-leases between NMSCO and JSD, and between NMSCO and GS, are believed to be for a 25-year term with options to renew for another 25 years thereafter and are also believed to provide both the Jets Defendants and Giants Defendants with an option to terminate their sub-lease after a 13-year period provided that in order for one team to exercise the option to terminate their sub-lease, the other team must agree to remain until the end of the initial term of the ground lease.  Pursuant to the ground lease,

the Defendants are only required to pay an annual fee to the NJSEA, believed to be several million dollars per year, and the Defendants are granted the right to retain all amounts received from, _inter alia_, the sale of the naming rights to NMS, fees from corporate sponsorships, the leasing of luxury suites and certain retail spaces at NMS, and fees from ticket sales and parking charges.

**D.    The Defendants Agree to Finance the Costs of Building NMS Through the Forced Sale of PSLs to the Class**

61.    In order to finance the cost of building NMS, Defendants successfully negotiated with the NFL to increase certain limits on the amounts the NFL is willing to make available in short term loans to member teams to finance costs involved in building new stadiums.  Defendants then agreed to, and did, obtain several hundred million dollars in short term loans from the NFL, the majority of which would have to be re-paid prior to, or soon after, the opening of the new stadium.

62.    In order to raise the several hundred million dollars of capital needed to re-pay their short-term loans, Defendants agreed with each other (and with the NFL), to jointly sell the naming rights for NMS and multi-year leases for luxury suites, and to create more than 125,000 PSLs which would then be sold to the Jets' and Giants' Season Ticket Holders at prices ranging from $1,000 - $25,000 per PSL.

63.    By tying the purchase of a PSL to the purchase of a 2010 Season Ticket and then also tying the right to maintain ownership of the PSL to the continued purchase of Season Tickets every year thereafter, Defendants were, and are, not only able to obtain several hundred million dollars needed to repay the principal and interest on the short term loans taken out to finance the cost of building NMS, but also to fix the prices for 2010 Season Tickets at supra-competitive rates and erect an artificial barrier to market forces that will enable them to fix prices for Season Tickets at artificially high, supra-competitive levels in the future.

**E.    Defendants Create Unconscionable PSL Agreements and Tie Their Sale to the Purchase of Season Tickets**

64.    The Defendants have prepared, and issued, various written materials for use in connection with the marketing and sale of PSLs to the Class that include glossy brochures, form letters to Season Ticket Holders and documents posted on the internet sites operated and maintained by the Defendants.

65.    Defendants have advised Plaintiff and the members of the Class that a PSL is an agreement between each member of the Class and either Defendant JSD or Defendant GS, pursuant to which, "[i]n exchange for a one-time fee," Defendants will provide the Class Member with the "right to buy season tickets" for a particular seat and the Class Member will "agree to buy them." (See, e.g., www.newjetsstadium.com/faq.php.) Defendants

have also publicly touted the fact that, unlike Renewal Rights, PSLs will be transferrable by Class Members, and could possibly even be sold at a profit, after 2011.

66.  Defendants have prepared, and intend to distribute, the PSL Agreements on pre-printed, standardized forms that are not subject to modification or negotiation.  A copy of the Jets' form PSL Agreement only recently was made available on the internet through several screens that cannot be modified by users.  Defendants have presented, and/or will be presenting, these PSL Agreements to the Class on a "take it or leave it" basis.  These PSL Agreements are contracts of adhesion.

67.  Pursuant to the terms of the PSL agreements, the Class Member/purchaser of a PSL (referred to in the Jets' form PSL Agreement as a "Licensee") must not only agree to purchase a 2010 Season Ticket - - at the highly increased prices set by Defendants that have been disclosed on their websites and in written materials issued by Defendants - - but must also "agree" to continue to purchase a Season Ticket for all pre-season and regular season games that the Jets and/or Giants play in the New Meadowlands Stadium (and purchase tickets to any playoff games held at NMS) at whatever prices the Defendants choose to set for these Season Tickets in the future, for every year that the Jets and/or Giants continue to play their home games at NMS.

68. The prices for PSLs and corresponding tickets for each of the 10 games required to be purchased in a 2010 Season Ticket are as follows:

| **AREA** | **PSL PRICE** | | **SINGLE GAME TICKET** | |
|---|---|---|---|---|
| | __Giants__ | __Jets__ | __Giants__ | __Jets__ |
| **Coaches Club** | $20,000 | Auction | $700 | $700 |
| **Field 1/Great Hall/Lower Prime** | $20,000 | $20,000-$25,000 | $160 | $140-$150 |
| **Field 2/Lower Sideline and Corner** | $10,000 | $10,000-$15,000 | $140 | $140 |
| **Field 3/Lower Redzone** | $5,000 | $5,000-$10,000 | $120 | $120-$140 |
| **Mezzanine A/ E/W Club** | $12,500 | $15,000-$25,000 | $500 | $500 |
| **Mezzanine B/ E/W Club Sideline** | $7,500 | $5,000-$7,500 | $400 | $400 |
| **Mezzanine** | $7,000 | $7,000 | $120 | $120 |
| **Loge/Upper Prime** | $5,000 | N/A | $105 | $125 |
| **Terrace 1/Upper Sideline** | $1,000 | N/A | $95 | $105-$125 |
| **Terrace 2/Upper Sideline** | $1,000 | N/A | $85 | $95 |

69.  Unlike the Class Members, who must agree to be contractually bound to purchase Season Tickets for every year that the Jets and/or Giants continue to play their home games at NMS, Defendants are not contractually bound to limit increases in the prices to be charged for Season Tickets.  In fact, Defendants are not even contractually bound to sell 2010 Season Tickets at the prices that have been established and disclosed on Defendants' websites.  The terms of the PSLs provide no assurances, guarantees or protections that Defendants will not set prices for Season Tickets for future NFL Seasons at more than twice, or ten times, the amounts they currently plan to charge in 2010.

70.  The rights and obligations of the PSL owner are set forth in Section 5 the form PSL agreement that were used by the Jets in connection with the sale of a limited amount of PSLs for seats in the lower tier of NMS, now called the "Coaches Club" area, and which is intended for use in the sale of all other PSLs by the Jets Defendants.  The PSL Agreement provides:

5.  <u>PSL Rights and Obligations</u>.

(a)  Licensee shall have the right and the obligation to purchase admission tickets for the Seats for all pre-season, regular season and post-season home games (excluding the Super Bowl) of the Jets scheduled to be played at the Stadium (together, "<u>Jets Home Games</u>") for as long as the Jets play home games at the Stadium, at prices and in a manner established by JSD, the Jets or, if applicable, the National Football League (the "<u>NFL</u>").  Licensee also shall have the right,

but not the obligation, to purchase (1) parking pass in a reserved parking lot for every two (2) Seats that are the subject of this PSL Agreement (e.g., one parking pass for two or three Seats; two parking passes for four or five Seats, etc.), at prices and in a manner established by JSD, for each Jets Home Game during the Term.

(b)  Subject to the limitations set forth in this PSL Agreement (including without limitation, the Transfer Procedures defined in Section 5© below), Licensee shall have the right to transfer its PSL by gift, bequest or otherwise; provided, however, that (i) a PSL may not be transferred at any time prior to March 1, 2011 other than to immediate family members of Licensee (defined as a spouse, chid, parent, sibling, or grandchild, niece or nephew of Licensee), and (ii) a PSL may not be transferred more than once each calendar year, except in the case of the death or disability of Licensee. There may be only one Licensee for a Seat at any given time and the person identified as the Licensee on the books and records of JSD shall be deemed the sole Licensee, absent manifest error.  Once a Licensee transfers a PSL with respect to a specified Seat, such Licensee will no longer have any rights associated with that Seat.

**\*   \*   \***

(g)  If Licensee does not purchase tickets and parking passes for Jets Home Games or other Stadium events by the dates specified by the issuer of such tickets or JSD, the issuer of such tickets or JSD, as applicable, shall have the right, but not the obligation, to sell such tickets and parking passes to persons other than Licensee and, in the case of a failure to acquire tickets to Jets Home Games, to exercise any other rights and remedies it may have.

71.  Defendants are also imposing contractual

Forfeiture Provisions in all PSL agreements by which the

purchaser is forced to "agree" to the forfeiture of the PSL, all rights under the PSL, and all monies paid to Defendants for the PSL, in the event that the purchaser is unable to, or does not wish to, purchase a Season Ticket every year by the dates set by Defendants in the future.

72. In the section entitled FAQ on the Giants' new stadium website, the Giants Defendants state:

> What happens if I don't purchase my season tickets?
>
> You forfeit your PSL. You must purchase season tickets every year for each PSL seat. Failure to purchase season tickets for your PSL seats (including Club seats) by a specified deadline each year will result in termination of your PSL Agreement for that seat. You also forfeit all monies paid for the PSL and all rights to buy season tickets for those seats for that season and all future seasons. In that case, Giants Stadium LLC will have the right to resell the PSL (and the associated right to purchase season tickets) with no obligation to you as a former PSL holder.

73. In a similar section of the Jets' new stadium website entitled FAQ, the Jets Defendants state:

> WHAT HAPPENS IF I DO NOT PURCHASE MY SEASON TICKETS OR COMPLETE MY PSL PAYMENTS:
>
> If you do not purchase your season tickets or complete your PSL payments, you will forfeit your PSL and all monies you have paid for that PSL. This means you will no longer have the right to buy season tickets for those seats for that season or any future season. Jets Stadium Development will have the right to resell your PSL with no obligation to you as the former PSL holder. If your season tickets are club seats, the default

provisions of the Club Seat Agreement also will apply.

74.  In their form PSL Agreement, the Jets Defendants are forcing Plaintiff and the Jets Tickets Sub-Class to agree to the following default provisions:

9.  <u>Default</u>.

(a)  Without limiting any of JSD's rights under this PSL Agreement, if Licensee fails to pay when due any amounts to be paid by Licensee pursuant to this PSL Agreement (including, without limitation, any Installment of the PSL Fee), otherwise defaults in the performance or observation of its duties and obligations under this PSL Agreement (including, without limitation, any violation of Section 8(a) above and any failure to purchase the tickets required to be purchased hereunder by deadlines JSD may establish from time to time), JSD may take one or more of the following actions without prior notice to Licensee (except for the notice required solely under clause (ii)):

(i)  unless and until Licensee cures the failure or default, withhold from distribution to Licensee and sell to others any tickets that Licensee otherwise would have the right to purchase under this PSL Agreement, and retain all proceeds therefrom (without refund, credit, or other obligation to Licensee), and/or

(ii) terminate the rights of Licensee under this PSL Agreement (A) immediately upon written notice to Licensee, if the failure or default is not capable of being cured (<u>e.g.</u>, a breach of Section 8(a)) or if the failure or default represents a repeated failure or default, or (B) ten (10) days after giving notice to Licensee, if such failure or default is capable of being cured and Licensee fails to cure within such ten (10) day period.

Upon termination pursuant to this Section 9, (w) Licensee will forfeit all monies previously paid to JSD hereunder, (x) Licensee will forfeit the PSL for the current (or upcoming) NFL season and all NFL seasons that follow, (y) JSD and its affiliates will have no further liability or obligation to Licensee, and (z) Licensee's obligation to pay the outstanding balance of the PSL Fee, if any, shall be accelerated, making the full outstanding balance immediately due and payable. JSD thereafter will have the right, but not the obligation, to relicense the forfeited PSL. Any amounts JSD receives from such relicensing shall not reduce Licensee's obligations to JSD or entitle Licensee to reimbursement or recovery of any amounts paid under this PSL Agreement.

(b) the foregoing remedies shall not be to the exclusion of any other right or remedy set forth in this PSL Agreement or otherwise available to JSD in law or in equity. Licensee shall be responsible for all attorneys' fees and costs incurred by JSD in the enforcement of this PSL Agreement. **LICENSEE HEREBY UNCONDITIONALLY WAIVES ITS RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM RELATING TO OR ARISING OUT OF THIS PSL AGREEMENT.**

75. The Giants Defendants are requiring Plaintiff and the Giants Tickets Sub-Class to agree to very similar, if not identical, default provisions in the PSL agreements that they are requiring to be purchased and accepted as a condition for purchasing 2010 Season Tickets.

76. The Forfeiture Provisions that Defendants are imposing on the Class are particularly unconscionable in light of the fact that Defendants have complete control over the market for the sale of Season Tickets in the N.Y. Metropolitan Area and

have reserved the unfettered right to fix and establish the prices at which Season Tickets may be sold in the future. Thus, Defendants will have the ability to manipulate the prices of Season Tickets and the value of PSLs from year to year and could easily create conditions by which they can, and will, obtain hundreds, if not thousands of PSLs, and all monies paid for PSLs, through forced forfeitures, without having to pay any consideration to the Class Members.

77. The Jets Defendants and Giants Defendants are also imposing, or will be imposing additional, unconscionable provisions in connection with PSLs, including waivers of rights to sue the Defendants and requirements to indemnify and hold Defendants harmless for their own negligence. For example, in Section 10 of the form PSL agreement, the Jets Defendants include the following provisions:

> 10. <u>Disclaimer of Liability:
> Indemnification</u>.
>
> (a) None of JSD, the Jets or New Meadowlands Stadium Company, LLC ("NMSCO"), or their respective members, officers, owners, managers, directors, employees or agents, shall be liable or responsible for any loss, damage or injury to any person or to any property of Licensee or its guests in or upon the Stadium, its parking areas or elsewhere resulting from any cause whatsoever, including, but not limited to the theft and vandalism, except to the extent due to the gross negligence or the willful misconduct of JSD, the Jets or NMSCO.
>
> (b) Licensee shall indemnify and hold harmless JSD, the Jets and NMSCO, and their

respective officers, owners, managers,
directors, employees and agents, from and
against any liability, losses, damages,
claims, demands, costs and expenses,
including attorneys' fees and litigation
expenses (including, in any action between
Licensee and any such indemnitee), arising
out of or related to any personal injury or
property damage (other than ordinary wear and
tear) occurring in or upon the Stadium or
elsewhere in connection with Licensee's or
its guests' (as defined in Section 8(a))
negligent use or occupancy of the Seats or
Stadium premises, or any misrepresentation
under or breath of the provisions of this PSL
Agreement or breach of any applicable laws,
rules, regulations or orders.

78.  Both the Jets Defendants and the Giants Defendants
have, on various occasions, represented that one of the primary
benefits of owning a PSL, as opposed to owning a contractual
Renewal Right, is the fact that a PSL may be transferred and
sold.  In fact, the Commissioner of the NFL, Roger Goodell, has
publicly stated that he considers the purchase of PSLs do be
"good investments."  Defendants have sought to foster the belief
that there will be a vibrant secondary market for PSL on which it
will be easy fo PSL owners to sell their PSLs for a fair price
and possibly even at a profit over what they were required to pay
for the PSL.

79.  In the FAQ section on the Jets Defendants' new
stadium website, under the question "What are the benefits of
purchasing a PSL seat?," the third bullet point states:

•       Transfer or sell your account.  If you
want to pass your seats on to a family
member, you will need to purchase a PSL in

order to do so.  If you sell it, you keep all
of the proceeds (see PSL agreement for
details).

80.   The Giants Defendants have similarly touted the
ability to transfer and sell PSLs as one of the reasons for
purchasing a PSL and have further represented to Plaintiff and
the Giants Tickets Sub-Class that they intend to create and
operate a secondary market for the re-sale of PSLs such that
"after March 1, 2011," Class Members may "place [their] PSL for
sale through Giants Stadium LLC PSL resale service."

81.   On the Jets' website, Defendants outlined the
transferability of PSLs as follows:

CAN I TRANSFER MY PSL?

PSL can be transferred, subject to the Jets
Transfer policy, once a year after March 1,
2011.  Once you transfer a PSL you will no
longer have any rights as it relates to that
seat(s).  Those seats without PSLs associated
with them -- the entire upper bowl -- are
non-transferable.

There will be a 3-month grace period between
November 1, 2008 and January 31, 2009 in
which current season ticket holders will be
permitted to consolidate or transfer accounts
at the existing stadium to immediate family
only.

HOW LONG DOES A PSL LAST?

PSLs are good for as long as the Jets play in
the new building in its current
configuration.

82.   Because a PSL is simply a contract that provides a
right and an obligation to purchase a Season Ticket every year

for the next 13 - 25 or more years, the prices charged for that Season Ticket will be the primary factor in the determination of the value of a PSL on any secondary market for the re-sale of PSLs that may exist in the future. The local economy and the quality of the football team are other, less important, factors that affect the value of a PSL. The lack of any disclosures about the estimated prices of Season Tickets after 2010 and the lack of any agreements or mechanisms to limit the amounts that the prices charged for a Season Ticket may be increased from year to year clearly affects, and depresses, the current value, and future re-sale value, of the PSLs purchased by the Plaintiff and the Class. Defendants have not disclosed these material facts to the members of the Class (and others) whom they have solicited to purchase PSLs.

83. Defendants have further depressed the present and future values of PSLs by failing to establish any means for PSL purchasers to redeem their PSLs or re-sell their PSLs back to the Jets Defendants or Giants Defendants in the future in exchange for their then-current fair market value. Instead, Defendants are imposing contractual provisions that will force PSL owners who are unable to purchase a Season Ticket in the future to accept far less than the fair value of the PSL in order to avoid the forfeiture of their PSL and the receipt of no compensation whatsoever if Defendants exercise their "rights" under the default provisions of the PSL agreements and later sell the

forfeited PSL to a third party.  The failure to even require Defendants to seek to mitigate the losses of PSL owners who are unable to purchase a Season Ticket in the future is unfair and will unjustly enrich Defendants at the expense of the members of the Class. Such provisions will create an artificial demand for Season Tickets in future years that will enable Defendants to fix and charge inflated supra-competitive prices for Season Tickets to a captive audience who must agree to purchase the Season Tickets at the inflated prices or risk losing the substantial amounts they had to invest to purchase the PSLs.

84.  In the promotional materials put out by the Jets Defendants and Giants Defendants, they tout the fact that PSLs will be transferrable and thus will have independent re-sale value in the future.  However, Defendants clearly do not disclose many material terms that currently affect, and will subsequently affect, the value of PSLs and the Class Member's ability to re-sell a PSL in the future.  Thus, there are no disclosures about, inter alia, the the purported secondary market for the sale of PSLs, such as who will operate it, how it will work and the costs involved in offering and selling a PSL on this secondary market; how the prices charged for Season Tickets in the future may affect the resale price of a PSL in any given year; and how the Forfeiture Provisions are likely to affect (and depress) the market and prices available for PSLs.  In fact, Defendants have

sought to deceive Plaintiff and the Class by failing to issue any risk disclosures at all in connection with their sale of PSLs.

85.  Defendants also fail to disclose material terms regarding the ground lease between NJSEA and Defendant NMSCO and the related sub-leases between NMSCO and Defendants JSD and GS. Pursuant to the Jets' form PSL agreement, the rights of Jets Tickets Sub-Class Members are purported to be subordinate to, "(i) the Stadium Project Ground Lease and Development Agreement, dated as of December 21, 2006, by and between New Jersey Sports and Exposition Authority and NMSCO (the 'Ground Lease'), and (ii) the Sublease Agreement, dated of as of August 16, 2007, by and between New Meadowlands Stadium Company, LLC and JSD (the 'Stadium Lease'), as either may be amended, restated, modified, supplemented, extended or assigned from time to time, and any and all amendments thereto."  The rights of Giants Tickets Sub-Class Members will be similarly made subordinate to the terms of the ground lease and sub-lease between NMSCO and GS.  However, the Defendants have not disclosed any of these lease or sub-lease agreements signed by Defendants, nor have they disclosed even a summary of the material terms of such agreements to Class Members.  As a result, Defendants have omitted and failed to disclose material facts to Plaintiff and the Class, such as that although the lease and subleases are for a period of 25 years, the teams each have options to terminate their sub-lease after just 13 years.  This information clearly is material to the

determination of the present value of a PSL, and the future market value of a PSL, but has not been disclosed to the Class.

      86.  Both the Jets Defendants and Giants Defendants have also entered into agreements with Ticketmaster to operate a "ticket exchange" service by which Class Members are able to sell tickets to individual games to consumers who agree to sign up for placement on a "waiting list" to buy Season Tickets and a subscription to the team's internet ticket exchange service.  In order to use the ticket exchange service, Class Members and the other subscribers must provide, and agree to allow Defendants to compile and sell, personal information to third parties.  In addition, Class Members and subscribers agree to pay fees charged to both the seller and buyer in connection with all transactions for the sale of tickets by Class Members to other ticket exchange service subscribers.  The Defendants receive substantial fee income from their agreements with Ticketmaster and the operation of their respective on-line ticket exchange services.

      87.  In connection with the marketing and sale of PSLs and 2010 Season Tickets to the Class, the Defendants have issued many misleading statements and omissions of material facts  - - including representations about the value of being able to transfer and sell PSLs and the benefits of Defendants' respective on-line ticket re-sale services.  However, in the very small fine print of the PSL Agreements, the Defendants purport to have Plaintiff and the Class disavow their reliance on any such

statements and omissions of Defendants.  For example, the Jets'
form PSL agreement requires Jets Tickets Sub-Class Members to
make the following representations:

> 7.  <u>Representations of Licensee</u>.
> Licensee represents, warrants and agrees as
> follows:
>
> (a)  Licensee has read and understands
> the terms of this PSL Agreement;
>
> (b)  Licensee is not acquiring this PSL
> as an investment and has no expectation of
> profit as the licensee of this PSL;
>
> (c)  Licensee is acquiring this PSL for
> its own use and not with a view to the
> distribution or resale of this PSL or any
> tickets acquired pursuant to this PSL;
>
> (d)  Licensee is acquiring this PSL
> solely for the right to purchase tickets to
> Jets Home Games played in the Stadium;
>
> (e)  Licensee acknowledges that
> acquiring this PSL does not give Licensee any
> ownership, voting or other equity interest in
> the Stadium, the Jets or JSD;
>
> (f)  Licensee acknowledges that this PSL
> may be transferred only in accordance with
> this PSL Agreement and the Transfer
> Procedures and that PSLs are subject to
> forfeiture under certain circumstances;
>
> (g)  Licensee acknowledges that,
> although this PSL is transferable subject to
> the provisions of this PSL Agreement and the
> Transfer Procedures, JSD has not represented
> and does not guarantee that there is or ever
> will be a market for the resale of this PSL;
> and
>
> (h)  in accepting this PSL Agreement and
> agreeing to its terms and conditions,
> Licensee has not relied on any
> representations, warranties, or other

statements of any kind made by or on behalf
of JSD, the Jets, or any of their respective
members, owners, officers, employees, agents,
representatives or affiliates, except as
expressly stated in this PSL Agreement.

## CLAIM I

### (Violation of State Consumer
### Protection Acts Against All Defendants)

88.  Plaintiff repeats the allegations contained in
Paragraphs 1-87 as if fully set forth herein.

89.  This Claim is asserted by Plaintiff individually
and on behalf of the Class (or alternative Similar State Law
Class) defined herein.

90.  Plaintiff brings his statutory consumer fraud and
unfair business practices claims pursuant to the NJCFA and the
substantially similar State Consumer Protection Acts of the
states where the vast majority of members of the Class reside,
all of which were enacted and designed to protect consumers
against unconscionable business conduct and unfair, deceptive
and/or fraudulent business practices.  See, e.g., N.J.S.A. §
56:8-1 et seq.  These Consumer Protection Acts are modeled after
the FTC's consumer protection provisions.

91.  The State Consumer Protection Acts in
Pennsylvania, Connecticut, New York, Florida and California and
most, if not all, other states are similar to New Jersey's
Consumer Fraud Act and all contain provisions similar to N.J.S.A.
§ 56:8-2, which provides:

50

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact . . . whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.[3]

92. At all relevant times, Defendants were and are "persons" within the meaning of the NJCFA and all other State Consumer Protection Acts, see, e.g., N.J.S.A. § 56:8-1.

93. All of the State Consumer Protection Acts permit individual consumers to seek damages and injunctive relief for injuries resulting from unfair and/or deceptive business and trade practices. For example, the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-19, provides that:

[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section, including those brought by the Attorney General, the court shall also award

---

[3] For example, the CUTPA similarly provides that: "[n]o person shall engage in unfair methods of competition and unfair and deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110B.

reasonable attorneys fees, filing fees and
reasonable costs of suit.

94.   At all relevant times, Plaintiff and the Class
Members were and are "persons" and "consumers" within the meaning
of the NJCFA and all other similar State Consumer Protection
Acts, see e.g., N.J.S.A. § 56:8-19.

95.   Defendants have employed and engaged in
unconscionable commercial practices and unfair and deceptive
trade practices, including forcing the Class to purchase PSL
Agreements by tying the purchase of PSLs to the purchase of
Season Tickets; creating PSLs with Forfeiture Provisions that
impose illegal penalties; omitting to disclose information
material to the determination of whether to agree to purchase,
and/or to purchase, a PSL, including information about the terms
of the PSL agreements, the ground lease between NJSEA and NMSCO
and the sub-leases between NMSCO and Defendants JSD and GS and
other material information relevant to the determination of the
present value of PSLs; disseminating deceptive and misleading
marketing and advertising materials which Defendants then require
Plaintiff and the Class to agree to disregard as part of the
terms of the PSL Agreements and conspiring to monopolize, and
erecting barriers to competition in, several local product
markets thus allowing Defendants to set, raise or maintain prices
charged to consumers at artificial supra-competitive levels.

96. As a result of the foregoing, the Plaintiff and Class and Sub-Classes have incurred monetary losses, lost property and/or property rights, and have been injured and will continue to be injured and harmed in the future. In addition, consumers who wish to, and do, purchase luxury suites or tickets to large-scale events in the N.Y. Metropolitan Area are threatened with, and will incur, injuries and damages in the future.

97. Defendants have willfully and knowingly engaged in unconscionable commercial practices and unfair and deceptive conduct, including dissemination of deceptive and materially misleading advertising, which was undertaken in, disseminated in, and directed toward Plaintiff and the Class, which includes numerous New Jersey residents.

98. Defendants' wrongful conduct has caused consumer injury and harm to the public interest by forcing consumers to purchase unwanted products; by requiring consumers to pay fixed, artificially inflated, supra-competitive prices for products sold by Defendants; by depriving the public of an alternate large-capacity facility to attend sports, entertainment and other large-scale events; by lessening competition in at least three local product markets, and by undermining the public's interest in an honest marketplace and non-deceptive public speech.

99.  The sale of Season Tickets, the creation and sale of PSLs, and the sale of tickets to large-scale events are acts or practices in the conduct of trade or commerce.

100. The sale of Season Tickets, the creation and sale of PSLs, and the sale of tickets to large-scale events impact the public interest.

101. The creation and sale of PSLs is deceptive and unfair because Defendants describe PSLs as providing new and separate benefits, with the possibility of increases in value and opportunity to re-sell the PSL on a secondary market when, in fact, a PSL is simply a newly added separate charge for the Renewal Rights that were previously included in the price of a Season Ticket and were unilaterally terminated without cause and without any consideration provided to the Plaintiff and Class by the Defendants.

102. The imposition of a requirement to purchase a PSL in order to continue to purchase Season Tickets and Forfeiture Provisions in the PSL Agreements are unfair because the PSL Agreements require the continued purchase of Season Tickets regardless of the prices that may be set by Defendants for such Season Tickets in future years, and Class Members are always at risk of forfeiture while Defendants are never at risk.

103. The tying of PSLs to Season Tickets and the PSL Forfeiture Provisions are illegal penalties and are unfair because they offend public policy; are so oppressive that the

consumer has little alternative but to purchase a PSL and accept onerous terms, and to continue to purchase Season Tickets at supra-competitive prices and thus, these acts and practices cause consumers substantial injury.

104. Plaintiff and the Class have suffered economic injury and actual losses as a direct and proximate result of Defendants' conduct, including, but not limited to, the amounts improperly charged for the PSLs and the loss of their valuable Renewal Rights without any compensation.

105. Defendants committed deceptive acts or practices and/or unfair commercial practices within the meaning of NJCFA and the similar State Consumer Protection Acts by engaging in the acts and practices alleged herein.

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a) and (b)(3), and certifying the Class and/or State Law Sub-Classes defined herein;

B.    Designating Plaintiff as Class representative and counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiff and the Class and against Defendants;

D.    Awarding Plaintiff and Class Members their trebled damages in an amount to be determined at trial and attorneys' fees and allowing costs, including interest;

E.    Enjoining all ongoing unconscionable commercial practices and unfair and deceptive trade practices, including prohibition of the sale of PSLs, and declaring the Forfeiture Provisions void and unenforceable, and voiding all other unfair terms in the PSL Agreements;

F.    Requiring Defendants to (a) disclose material information, such as material terms in the ground leases and sub-leases for NMS, the prices for Season Tickets in 2011 and thereafter, the amounts of expected annual increases in the prices of Season Tickets and terms applicable to future transfers of PSLs, including the amount of fees that Defendants may charge in connection with any such transfers, (b) agree to limit the amounts that prices charged for Season Tickets may be increased from one year to the next to the same percentage increases in the cost of living index in the N.Y. Metropolitan Area or some other parameter or set percentage amount, and to include such limits in the terms of the PSL Agreements, and © create a transparent, efficient secondary market for PSLs with a mechanism for the redemption of PSLs that would require Defendants to re-purchase PSLs from Class Members who are unwilling or unable to purchase Season Tickets in any given year in exchange for the current fair market value of the PSL (less an established redemption fee

disclosed to the class) or a set majority percentage of the proceeds recovered by Defendants from the re-sale of the redeemed PSLs; and

G.   Granting such further relief as the Court deems just.

## CLAIM II

### (Declaratory Relief Pursuant to
### 28 U.S.C. § 2201 Against All Defendants)

106. Plaintiff repeats the allegations contained in Paragraphs 1-105 as if fully set forth herein.

107. This Claim is asserted by Plaintiff individually and on behalf of the Class, as defined herein.

108. There is an actual controversy between Defendants, on the one hand, and Plaintiff and the Class, on the other, concerning the validity, legality and enforceability of PSL Agreements and/or specific terms of the PSL Agreements that Plaintiff and the Class have been, and are being, required to sign or accept, including the Forfeiture Provisions contained in all PSL Agreements, to which Defendants JSD and GS and the Class are all parties.

109. Pursuant to 28 U.S.C. § 2201 this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

110. Plaintiff is an interested party who seeks a declaration of his rights and legal relations vis-à-vis Defendants with regard to the PSL Agreements and/or provisions contained in the PSL Agreements to which they are all parties or beneficiaries.

111. Defendants have illegally leveraged their monopoly and/or dominant control over unique product market(s) to illegally tie the required purchase of an unwanted product at artificially fixed and inflated prices to the purchase of a desired product over which Defendants are the only suppliers in the N.Y. Metropolitan Area.

112. Defendants' PSLs impose unenforceable and unconscionable monetary penalties on the Plaintiff and the Class.

113. Plaintiff and other Class Members who are being required to agree to purchase PSLs and agree to unfair contractual terms, including the illegal Forfeiture Provisions, have been damaged because they were, and are, being forced to agree to penalties which may not legally be imposed.

**WHEREFORE**, Plaintiff, individually and on behalf of the Class of persons described herein, prays for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a) and (b)(2), and certifying the Class defined herein;

B.    Designating Plaintiff as representative of the Class and Sub-Classes and counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiff and the Class and against Defendants;

D.    Declaring, pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201(a), that (1) Defendants' aforementioned conduct constitutes: unlawful tying of the purchase of an unwanted product to the purchase of a unique product over which Defendants have dominant market power and control; unconscionable commercial practices and unfair and deceptive trade practices and breaches of valid contracts between the Plaintiff and Class Members and the Jets Defendants and/or Giants Defendants, and (2) Defendants have violated Section 1 of the Sherman Act, Sections 56:8-2 of the NJCFA and similar provisions in all other similar State Consumer Protection Acts, and state common law; and

E.    Granting such further relief as the Court deems just.

## CLAIM III

### (Breach of Contract Against the
### Jets Defendants and Giants Defendants)

114. Plaintiff repeats the allegations contained in Paragraphs 1-113 as if fully set forth herein.

115. This Claim is asserted by Plaintiff individually and on behalf of the Class, as defined herein.

116. Plaintiff and the Class have entered into contracts, whether written or implied by conduct, with the Jets Defendants and Giants Defendants.

117. Pursuant to these contracts, the Plaintiff and Class Members agreed to, and have, purchased Season Tickets and annually paid the required monetary amounts established by Defendants, and the Jets Defendants and Giants Defendants agreed to, and have, provided Plaintiff and the Class Members with a bundle of tickets to attend the home games played each year by the Jets and/or Giants football teams and a Renewal Right, i.e., the contractual right to purchase a Season Ticket for each successive NFL Season.

118. Defendants are estopped from denying the existence of, or repudiating, the contractual Renewal Rights of Plaintiff and the Class without providing any consideration. Defendants knowingly induced Plaintiff and the Class to expect to receive Renewal Rights over the course of more than 25 years during which Defendants agreed to, did, provide Plaintiff and Class members with a Season Ticket and Renewal Right in Defendants are estopped from denying the existence of, or repudiating, the contractual Renewal Rights of Plaintiff and the Class. Defendants knowingly induced Plaintiff and the Class to expect to receive Renewal Rights over the course of more than 25 years during which Defendants agreed to, and did, provide Plaintiff and Class members with a Season Ticket and Renewal Right in each and every

year in exchange for monetary payments from the Plaintiff and Class in amounts that were established by Defendants.

119. The Jets Defendants and Giants Defendants have announced their intent to unilaterally terminate all Renewal Rights for Season Tickets purchased by the Giants Ticket Sub-Class and for Season Tickets purchased by the Jets Ticket Sub-Class for seats located in the lower tier of NMS - - without providing any consideration in exchange for the termination of such rights - - in breach of their existing contracts with Plaintiff and the Class.

120. The Jets Defendants and Giants Defendants unilaterally terminated valuable contractual rights and expectations of Plaintiff and the Class without providing any consideration for the elimination of such rights and the value of the benefits conferred on Defendants by the elimination of such Renewal Rights.

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a) and (b)(3), and certifying the Class or the State Law Class defined herein;

B. Designating Plaintiff as Class representative and counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiff and the Class and against the Jets Defendants and Giants Defendants;

D.    Awarding Plaintiff and Class Members damages in an amount to be determined at trial and attorneys' fees, and allowing costs, including interest;

E.    Enjoining all ongoing breaches of the contracts between Plaintiff and the Class and the Jets Defendants and/or Giants Defendants;

F.    Voiding the sale of PSLs, continuing to enforce all Renewal Rights and requiring Defendants to disgorge all monies received from the sale of PSLs; and

G.    Granting such further relief as the Court deems just.

## CLAIM IV

### (Unjust Enrichment Against the Jets Defendants and Giants Defendants)

121. Plaintiff repeats the allegations contained in Paragraphs 1-120 as if fully set forth herein.

122. This Claim is asserted by Plaintiff individually and on behalf of the Class, as defined herein.

123. The Jets Defendants and Giants Defendants have received and retained valuable benefits conferred by Plaintiff and Class Members at their expense through their elimination of the Class' Renewal Rights and imposition and collection of payments for PSLs that oblige Plaintiff and the Class to agree to

continue to purchase Season Tickets for as long as the teams play home games at NMS and to purchase tickets for any playoff games played at NMS or else be subject to the forfeiture of their PSLs without compensation therefore.

124. Defendants will receive and retain benefits conferred by Plaintiff and the Class from the termination of their Renewal Rights and in the event that the Forfeiture Provisions of the PSLs are enforced against Plaintiff or Class Members in the future. Defendants have also received, and are continuing to receive, fees from the improper sale of personal information about the Class and other public consumers.

125. As hereinabove alleged, the Jets Defendants and Giants Defendants have benefitted and will continue to receive benefits unjustly at the Plaintiff's and Class Members' expense, which in equity and good conscience, such Defendants should not be permitted to retain.

126. Plaintiff and Class Members have no fully adequate remedy at law because of Defendants' conduct.

127. As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and the Class Members have suffered non-monetary and monetary injury.

128. Plaintiff and the Class (or Similar State Law Class), are entitled to restitution from Defendants and an order for the disgorgement of all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

**WHEREFORE,** Plaintiff, individually and on behalf of the Class, prays for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a) and (b)(3), and certifying the Class (or Similar State Laws Class), Giants Tickets Sub-Class and Jets Tickets Sub-Class defined herein;

B. Designating Plaintiff as Class representative and counsel as Class Counsel;

C. Entering judgment in favor of Plaintiff and the Class and against Defendants;

D. Directing Defendants to disgorge all amounts unjustly obtained through the sale of PSLs;

E. Enjoining all ongoing and future agreements, practices and acts to enforce the Forfeiture Provisions, including a declaration that the Forfeiture Provisions of any PSL agreements are void and unenforceable, and requiring Defendants, in connection with every PSL that they seek to re-acquire from Class Members, to either return all amounts paid by the Class Member for the PSL, or pay an amount equal to the fair market value of the PSL, or mitigate losses by providing Class Members with all proceeds received from any re-sales of the PSL by Defendants, and refusing to enforce all other unfair terms in the PSL Agreements;

F.   Requiring Defendants to (a) disclose material information, such as material terms in the ground leases and sub-leases for NMS, the prices for Season Tickets in 2011 and thereafter, the amounts of expected annual increases in the prices of Season Tickets and terms applicable to future transfers of PSLs, including the amount of fees that Defendants may charge in connection with any such transfers, (b) agree to limit the amounts that prices charged for Season Tickets may be increased from one year to the next to the same percentage increases in the cost of living index in the N.Y. Metropolitan Area or some other set percentage amount, and to include such limits in the terms of the PSL Agreements, and (c)create a transparent, efficient secondary market for PSLs with a mechanism for the redemption of PSLs that would require Defendants to re-purchase PSLs from Class Members who are unwilling or unable to purchase Season Tickets in any given year in exchange for the current fair market value of the PSL (less an established redemption fee disclosed to the class) or a set majority percentage of the proceeds recovered by Defendants from the re-sale of the redeemed PSLs; and

G.   Granting such further relief as the Court deems just.

## CLAIM V

### (Injunctive Relief Against Defendants)

129. Plaintiff repeats the allegations contained in Paragraphs 1-128 as if fully set forth herein.

130. This Claim is asserted by Plaintiff, individually and on behalf of the Class Members as defined herein.

131. The conduct set forth herein regarding the charging and collection of payments for PSLs is an unjust, unreasonable, and illegal commercial practice in violation of, inter alia, Section 1 of the Sherman Act, Section 16 of the Clayton Act, the NJCFA and the similar Consumer Protection Acts of the states set forth herein.

132. Plaintiff and Class Members have no adequate remedy at law because of the Defendants' conduct.

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a) and (b)(3), and certifying the Class (or Similar State Laws Class), Giants Tickets Sub-Class and Jets Tickets Sub-Class defined herein;

B.   Designating Plaintiff as Class representative and counsel as Class Counsel;

C.   Entering judgment in favor of Plaintiff and the Class and against Defendants;

D.   Enjoining all ongoing and future anti-competitive agreements, combinations, conspiracies, practices and acts, including the prohibition of all requirements that a PSL must be purchased as a condition of the purchase of a 2010 Season Ticket,

a declaration that the Forfeiture Provisions of any PSL agreements are void and unenforceable, and refusing to enforce all other unfair terms in the PSL Agreements;

E.   Requiring Defendants to (a) disclose material information, such as material terms in the ground leases and sub-leases for NMS, the prices for Season Tickets in 2011 and thereafter, the amounts of expected annual increases in the prices of Season Tickets and terms applicable to future transfers of PSLs, including the amount of fees that Defendants may charge in connection with any such transfers, (b) agree to limit the amounts that prices charged for Season Tickets may be increased from one year to the next to the same percentage increases in the cost of living index in the N.Y. Metropolitan Area or some other set percentage amount, and to include such limits in the terms of the PSL Agreements, and (c) create a transparent, efficient secondary market for PSLs with a mechanism for the redemption of PSLs that would require Defendants to re-purchase PSLs from Class Members who are unwilling or unable to purchase Season Tickets in any given year in exchange for the current fair market value of the PSL (less an established redemption fee disclosed to the class) or a set majority percentage of the proceeds recovered by Defendants from the re-sale of the redeemed PSLs; and

F.   Granting such further relief as the Court deems just.

## CLAIM VI

### (Claim for Damages and Injunctive Relief Under Sections 4 and 16 of the Clayton Act for Violations of Section 1 of the Sherman Act: Illegal Tying Against All Defendants)

133. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 132 above as though the same were set forth in full herein.

134. This Claim is asserted by Plaintiff, individually and on behalf of the Class (including the Jets Tickets and Giants Tickets Sub-Classes) as defined herein.

135. The Jets Defendants and Giants Defendants have entered into several collusive contracts, combinations, conspiracies and agreements pursuant to which they have created, marketed and sold PSLs to the Class (and intend to establish a re-sale market for PSLs).

136. Pursuant to their agreements to create and sell PSLs to the Plaintiff and the Class, Defendants, (A) terminated the Class' Renewal Rights, (B) fixed, established and maintained the prices of all PSLs, (C) tied the purchase of a PSL to the purchase of a Season Ticket, and (D) established, and imposed on the Class, unconscionable contractual terms that require the owner of a PSL to either continue to purchase a Season Ticket for the seat associated with the PSL for every year that the team continues to play their home games at NMS (regardless of the prices that may be set for such Season Tickets in the future) or else forfeit their ownership of the PSL to the Defendants without

68

any compensation to be paid by Defendants in exchange for that PSL.

137. By creating, establishing and imposing the terms of, and forcing Class Members to purchase, PSLs, Defendants have been able to, will, and will continue to, severely restrict and reduce competition in the markets for the sale of Season Tickets and for the re-sale of PSLs. For example, Defendants are now able to, and will, set fixed, artificially inflated, supra-competitive prices for Season Tickets in 2011 and every year thereafter because owners of PSLs will hereafter be unlawfully coerced into purchasing such Season Tickets to avoid having to forfeit their PSL and forfeit all amounts paid to acquire that PSL. Thus, Defendants are improperly erecting a new and wholly artificial barrier to the establishment of prices for Season Tickets that are based on competitive market forces by creating an artificial (and coerced) demand for Season Tickets in 2011 and every year thereafter that will enable Defendants to set supra-competitive prices for Season Tickets with less concern regarding the impact of market factors such as the quality of the team and strength of the local economy in the Geographic Area.

138. Pursuant to their anti-competitive plans, conspiracies and agreements, the Defendants illegally agreed to, and did, leverage their dominant positions of control over, and/or monopoly power over, the market for the sale of tickets to NFL football games played in the Geographic Area, and have taken

advantage of current market conditions in which demand exceeds supply for Season Tickets, in order to illegally and unconscionably tie the purchase of a PSL to the purchase of Season Ticket for games played in NMS in 2010 and thereafter. By tying the purchase of a PSL to the purchase of a Season Ticket, Defendants were able to, and did, force Plaintiff and members of the Class to agree to purchase a product that they did not want to purchase and would not otherwise have purchased separately "but for" the fact that the purchase of a PSL was, and is, tied to the purchase of a Season Ticket.

139. By tying the purchase of a PSL to the purchase of a Season Ticket, and imposing contractual conditions that require the purchaser/owner of a PSL to continue to purchase Season Tickets each year (regardless of the prices set by Defendants for these tickets) or else forfeit their ownership of the PSLs without any compensation, the Jets Defendants and Giants Defendants have used, and will continue to leverage, their control over the market for Season Tickets to charge artificial, supra-competitive prices for Season Tickets in the future. The Defendants' improper tie of the purchase of a PSL to the purchase of a Season Ticket and imposition of onerous contractual terms requiring the continued purchase of Season Tickets as a condition of maintaining the PSL, are intended to be, and are, anti-competitive and unconscionable business practices that violate Section 1 of the Sherman Act.

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a) and (b)(3), and certifying the Class (or Similar State Laws Class), Giants Tickets Sub-Class and Jets Tickets Sub-Class defined herein;

B.   Designating Plaintiff as Class representative and counsel as Class Counsel;

C.   Entering judgment in favor of Plaintiff and the Class and against Defendants;

D.   Awarding Plaintiff and Class Members their trebled damages in an amount to be determined at trial and attorneys' fees and allowing costs, including interest;

E.   Enjoining all ongoing and future anti-competitive agreements, combinations, conspiracies, practices and acts, including the prohibition of all requirements that a PSL must be purchased as a condition of the purchase of a 2010 Season Ticket, a declaration that the Forfeiture Provisions of any PSL agreements are void and unenforceable, and refusing to enforce all other unfair terms in the PSL Agreements;

F.   Requiring Defendants to (a) disclose material information, such as material terms in the ground leases and sub-leases for NMS, the prices for Season Tickets in 2011 and thereafter, the amounts of expected annual increases in the

prices of Season Tickets and terms applicable to future transfers of PSLs, including the amount of fees that Defendants may charge in connection with any such transfers, (b) agree to limit the amounts that prices charged for Season Tickets may be increased from one year to the next to the same percentage increases in the cost of living index in the N.Y. Metropolitan Area or some other set percentage amount, and to include such limits in the terms of the PSL Agreements, and (c) create a transparent, efficient secondary market for PSLs with a mechanism for the redemption of PSLs that would require Defendants to re-purchase PSLs from Class Members who are unwilling or unable to purchase Season Tickets in any given year in exchange for the current fair market value of the PSL (less an established redemption fee disclosed to the class) or a set majority percentage of the proceeds recovered by Defendants from the re-sale of the redeemed PSLs; and

G.    Granting such further relief as the Court deems just.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff and the Class requests that judgment be entered that:

(a)    Plaintiff and the Class have been injured by Defendants' unconscionable commercial practices and willful and knowing deceptive and misleading conduct in violation of the NJCFA, N.J.S.A. 56:8-2, and the similar provisions in all State Consumer Protection Acts, and by Defendants' wrongful and anti-

competitive conduct in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and as a result, Plaintiff and the Class are entitled to compensatory damages in an amount to be determined at trial, which are to be trebled in accordance with N.J.S.A. 56:8-19 and similar provisions in the State Consumer Protection Acts and 15 U.S.C. § 15.

(b)   Plaintiff and the Class are entitled to recover the costs of this action and their attorneys' fees, pursuant to N.J.S.A. 56:8-19 and similar provisions in all State Consumer Protection Acts, and 15 U.S.C. §§ 15 and 26.

(c)   This action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff is appointed Class representative, and that Plaintiff's counsel shall be appointed as counsel for the Class.

(d)   Defendants have violated the NJCFA, N.J.S.A. 56:8-2, and similar provisions in all State Consumer Protection Acts and Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

(e)   The PSL Agreements sold, or being sold, to Plaintiff and the Class are unlawful and null and void.

(f)   Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner, continuing, maintaining or renewing the contracts, combinations or conspiracy alleged

herein, or from engaging in any other acts, combinations or conspiracies having similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect, including a permanent injunction against all acts to enforce (i) requirements that a PSL must be purchased as a condition of the purchase of a 2010 Season Ticket, (ii) any of the Forfeiture Provisions of any PSL agreements and (iii) all other unfair terms in the PSL Agreements, pursuant to the State Consumer Protection Acts and/or Section 16 of the Clayton Antitrust Act of 1914, 15 U.S.C. § 29.

(g) Requiring Defendants to (i) disclose material information, such as material terms in the ground leases and sub-leases for NMS, the prices for Season Tickets in 2011 and thereafter, the amounts of expected annual increases in the prices of Season Tickets and terms applicable to future transfers of PSLs, including the amount of fees that Defendants may charge in connection with any such transfers, (ii) agree to limit the amounts that prices charged for Season Tickets may be increased from one year to the next to the same percentage increases in the cost of living index in the N.Y. Metropolitan Area or some other set percentage amount, and to include such limits in the terms of the PSL Agreements, and (iii) create a transparent, efficient secondary market for PSLs with a mechanism for the redemption of PSLs that would require Defendants to re-purchase PSLs from Class Members who are unwilling or unable to purchase Season Tickets in

any given year in exchange for the current fair market value of the PSL (less an established redemption fee disclosed to the class) or a set majority percentage of the proceeds recovered by Defendants from the re-sale of the redeemed PSLs; and

(h)  providing Plaintiff and the members of the Class with such additional relief as the Court may find just and proper, including such other preliminary and permanent relief as is deemed necessary and appropriate.

## JURY DEMAND

Plaintiff and the Class demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues triable of right by a jury.

DATED:  New York, New York
        March 16, 2009

**LAW OFFICES OF JAMES V. BASHIAN, P.C.**

By:  /s/ James V. Bashian
     James V. Bashian
     70 Adams Street, 4th Floor
     Hoboken, NJ 07030
     Tel (973) 227-6330
     Fax (201) 488-3330

**Local Counsel for Plaintiff**

**GLANCY BINKOW & GOLDBERG LLP**

By:  /s/ Andrew D. Friedman
     Andrew D. Friedman, Of Counsel
     430 Park Avenue, Suite 702
     New York, New York 10022
     Tel: (212) 308-6300
     Fax: (212) 308-6570

**Lead Counsel for Plaintiff**

**HARWOOD FEFFER LLP**
Joel C. Feffer
488 Madison Avenue, 8th Floor
New York, New York 10022
Tel: (212) 935-7400
Fax: (212) 753-3630

**Co-Counsel for Plaintiff**