NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

HAROLD OSHINSKY, individually, and On Behalf of a Class of Similarly Situated Persons,

          Plaintiffs,

vs.

NEW YORK FOOTBALL GIANTS, INC. et al.,

          Defendants.

Civil Action No.: 09-cv-1186 (PGS)

**OPINION**

SHERIDAN, U.S.D.J.

      This is a putative class action brought on behalf of existing season ticket holders of the New York Football Giants and the New York Jets challenging the teams' requirement that they purchase personal seat licenses ("PSL") for season tickets in the new Giants Stadium (the "New Stadium") beginning with the 2010 season. Under the existing arrangement, the purchase price for Giants and Jets season tickets is limited to the face value of the ticket multiplied by the number of games. With the implementation of PSLs, however, fans are required to pay an up-front fee for the right to purchase all future Giants season tickets and some Jets season tickets. The money received from PSL purchases is intended to defray the cost of building the New Stadium. But the plaintiff Harold Oshinsky ("Plaintiff") complains that PSLs are inequitable, breach their existing contractual rights with the teams, and violate federal antitrust laws.

Currently before the Court are defendants New York Football Giants, Inc. and Giants Stadium LLC's (the "Giants Defendants") motion to dismiss, defendants New York Jets LLC and Jets Stadium Development LLC's (the "Jets Defendants") motion to dismiss,[1] and Plaintiff's motion to strike exhibits submitted in support of the Giants Defendants' and Jets Defendants' (collectively, "Defendants") motions to dismiss.[2] For the reasons set forth below, the Court will grant in part and deny in part Defendants' motions to dismiss and grant in part and deny in part Plaintiff's motion to strike.

## I. BACKGROUND

The Giants and Jets are the only two National Football League ("NFL") teams that are permitted by the NFL to play their home games in the New York metropolitan area. (Compl. ¶ 48.) Given NFL restrictions, and combined with the population of the New York metropolitan area, demand for tickets well exceeds supply. (*Id.* ¶ 49.) Indeed, the waiting list for Giants and Jets season tickets is currently over 150,000 and 13,500 people, respectively. (*Id.* ¶ 51.) For this reason, the Giants and Jets do not sell tickets to individual games. (*Id.*) Instead, all tickets are purchased by season ticket holders. (*Id.* ¶ 49.) The price of season tickets has always been (that is, prior to the upcoming 2010 season) calculated by multiplying the face value of the ticket by the number of games in the season. (*Id.* ¶ 50.)

For the past 24 years, Plaintiff has purchased six contiguous Giants season tickets located at Section 130, Row 8, Seats 21-26 in the existing Giants Stadium (the "Existing Stadium"), and four

---

[1] Although the Giants and Jets Defendants have filed separately, their briefs incorporate one another's arguments. (Jets Br. at 2 n.1.)

[2] This action has been stayed as to defendant New Meadowlands Stadium Company, LLC pending Defendants' motions to dismiss. (Docket Entry 24.)

contiguous Jets season tickets located at Section 131, Row 20, Seats 5-8 in the Existing Stadium. (*Id.* ¶¶ 11-14.) On or about July 21, 2008, Plaintiff and all those similarly situated received notice from the Giants Defendants that season ticket renewal procedures were being changed for the 2010 season, the first season in the New Stadium. (*Id.* ¶ 15.) Plaintiff and all those similarly situated would now be required to first purchase a PSL for each season ticket at a cost of $1,000 to $20,000. (*Id.*) The PSL would then give Plaintiff the right to purchase comparable 2010 season tickets for the New Stadium. (*Id.*) Similarly, on or about August 26, 2008, Plaintiff and all those similarly situated were informed by the Jets Defendants that they would be required to purchase a PSL for each "lower-tier" (but not "upper tier") season ticket at a cost of $5,000 to $25,000. (*Id.* ¶ 16.) Should a lower tier Jets season ticket holder elect not to purchase the PSL they could alternatively request placement on a list of persons eligible to receive upper tier season tickets in the New Stadium. (*Id.*)

Under either team's arrangement, if a PSL is not purchased, any existing season ticket renewal rights are forfeited. Moreover, if a PSL is purchased, but season tickets are not renewed for a subsequent season, the PSL is forfeited. (*Id.* ¶¶ 19, 74-76.) The benefit to owning a PSL is its transferability, subject to certain conditions. (*Id.* ¶¶ 79-81.) For example, according to the Jets Defendants stadium website, "[i]f you want to pass your seats on to a family member, you will need to purchase a PSL in order to do so. If you sell it, you keep all of the proceeds . . . ." (*Id.* ¶ 79.) As a result this transferability, "Defendants have sought to foster the belief that there will be a vibrant secondary market for PSL[s] . . . ." (*Id.* ¶ 78.) However, according to Plaintiff, the exact procedures and terms governing PSLs or the secondary market for PSLs have been fraudulently omitted. (*Id.* ¶¶ 82-87, 95.)

The purpose of PSLs is to partially finance the cost of building the New Stadium, which is estimated to be $1.6 billion. The New Stadium is the product of negotiations that began in or around 2002. (*Id.* ¶ 52.) During that time, the Giants Defendants initially envisioned renovating the Existing Stadium. (*Id.* ¶¶ 52, 54.) Nonetheless, for reasons not altogether clear from the complaint, during 2003-2004, the Giants Defendants abandoned their renovation plan and instead elected to build an entirely New Stadium. (*Id.* ¶ 52.) For their part, the Jets Defendants pursued plans to have their own stadium built on the West Side rail yards of Manhattan. (*Id.* ¶ 53.) In 2005, however, they "abruptly ceased all efforts to pursue plans to build and operate their own stadium" and entered into negotiations with the Giants Defendants to jointly own and operate the New Stadium. (*Id.* ¶ 56.) Plaintiffs attribute the Jets abandonment of the West Side stadium project as evidence of Defendants collusive, anti-competitive conduct. (*Id.* ¶¶ 57-60.)

As with many of the teams' fans, Plaintiff was upset with the implementation of PSLs and the substantial financial commitment required. As a result, on March 16, 2009, Plaintiff filed a six count complaint seeking relief for violations of state consumer laws, breach of contract, unjust enrichment and violations of antitrust laws.[3] Plaintiff purports to represent all persons, firms, corporations and other entities who purchased Giants and/or Jets season tickets for the 2008 season and who are compelled to purchase PSLs for comparable seats in the New Stadium (the "Putative Class"). (*Id.* ¶ 31.) Plaintiff's Putative Class also includes two sub-classes: "Giants Tickets Sub-Class" and the "Jets Tickets Sub-Class." (*Id.*) In the alternative, Plaintiff seeks to represent "All Class (and Sub-Class) Members residing in New Jersey, New York, Pennsylvania, Connecticut,

---

[3] As other courts have noted, "[w]hatever else might be said about professional football in the United States, it does seem to breed a hardy group of fans who do not fear litigation combat." *Coniglio v. Highwood Servs., Inc.*, 495 F.2d 1286, 1292 (2d Cir. 1974).

Florida and California.  Plaintiff alleges that there are more than 45,000 members in the Putative Class.  (*Id.* ¶ 32.)  Thereafter, on June 5, 2009, the Giants and Jets Defendants moved to dismiss.

## II.   STANDARD ON MOTION TO DISMISS

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court is required to accept as true all allegations in the complaint and to view the facts in a light most favorable to the non-moving party.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. *Iqbal*, 129 S. Ct. at 1950.  A court will not, however, accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 129 S. Ct. at 1949.  The Supreme Court has recently held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555.  Meaning, "factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

## III.   DISCUSSION

Plaintiff's motion to strike seeks to exclude from the record certain exhibits filed by Defendants in support of their motions to dismiss.  Given the potential impact of Plaintiff's motion to strike on Defendants' motions to dismiss, the Court will first consider Plaintiff's motion to strike.

### A.   Plaintiff's Motion to Strike

Plaintiff argues that Exhibits A - C to the Declaration of Louis M. Solomon and Exhibits 2 -

7 to the Declaration of Richard Hernandez should not be considered on a motion to dismiss because they are not integral to the complaint.[4]  The disputed exhibits to the Solomon Declaration are as follows: Exhibit A: the back of a Jets ticket for a single home game for the 2001-2005 seasons; Exhibit B: the back of a Jets ticket for a single home game for the 2006-2008 seasons; Exhibit C: the "Use of New York Jets Game Tickets" policy.  The disputed exhibits to the Hernandez Declaration are as follows: Exhibit 2: a September 30, 2005 *New York Times* article entitled "Giants Agree to Share a New Stadium;" Exhibit 3: a December 21, 2006 *Bergen Record* article entitled "Meadowlands Stadium Lease Approved;" Exhibit 4: a December 21, 2006 *New York Daily News* article entitled "Swamp Stadium Clears Hurdle;" Exhibit 5: Giants Season Ticket Subscription Notice for the 2009 season; Exhibit 6: a May 16, 2008 *Dallas Morning News* article entitled "Dallas Cowboys Reveal Pricing Plan for Reserved Seats;" Exhibit 7: the language appearing on the back of every ticket to a Giants home game.

"[A] district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.).  A court may, however, consider "a document integral to or explicitly relied upon in the complaint." *Id.* (internal quotations omitted); *see also In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n.9 (3d Cir.1993) ( "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the

---

[4] Although the plain language of Rule 12(f) speaks only to "pleadings" and not exhibits to a declaration filed in support of a motion to dismiss, *In re Schering-Plough Corp.*, Civil Action No. 08-CV-397 (DMC), 2009 WL 1410961, at *2 (D.N.J. May 19, 2009), the Court will address the merits of Plaintiff's motion.  By addressing the merits of Plaintiff's motion rather than denying it on procedural grounds, the Court can make clear what is being considered on Defendants' motions to dismiss.

document."). Consideration of these documents will not convert a motion to dismiss into one for summary judgment. *Burlington Coat Factory*, 114 F.3d at 1426. The test for whether a document is "integral" to a complaint is not whether it was explicitly cited. *Id.* If that were the case, a plaintiff could defeat a motion to dismiss merely by failing to cite to or attach the documents. *See McCabe v. Crawford & Co.*, 210 F.R.D. 631, 639 n.4 (N.D. Ill. 2002). Moreover, a plaintiff cannot defeat consideration of a integral document on a motion to dismiss unless it can offer a factual basis questioning its authenticity. *See Cal. Pub Employee' Retirement Sys. v. Chubb Corp.*, No. Civ. No. 00-4285(GEB), 2002 WL 33934282, at *13 (D.N.J. June 26, 2002).

The Court considers Exhibits A - C of the Solomon Declaration and Exhibits 5 and 7 of the Hernandez Declaration integral to the complaint. These exhibits go to the very heart of Plaintiff's breach of contract claim because they are express written agreements that may trump any allegations of an implied contract, *Baer v. Chase*, 392 F.3d 609, 616 (3d Cir. 2004), and the Court should consider them regardless of whether Plaintiff selectively omits specific reference to them in his complaint. The Court will not, however, consider Defendants' other disputed exhibits, newspaper articles. Consideration of newspaper articles at this juncture would unfairly prejudice Plaintiff, who does not yet have the benefit of discovery. The newspaper articles may also constitute inadmissable hearsay. *See, e.g.*, *Campbell v. City of New Kensington*, Civil Action No. 05-0467, 2009 WL 3166276, at *8 (E.D. Pa. Sept. 29, 2009) (refusing to consider newspaper articles constituting hearsay in opposition to motion for summary judgment). Thus, Plaintiff's motion to strike documents is granted in part and denied in part. The Court notes, however, that Plaintiff's motion is largely moot. As evident from the Court's analysis below, no consideration has been given to Defendants disputed exhibits in dismissing any of Plaintiff's claims.

### B.     Defendants' Motions to Dismiss

#### 1.     Breach of Contract

Plaintiff alleges that he has two contracts with each team: (1) a contract to purchase a bundle of individual tickets to all pre-season and regular season home games for an established seat location; and (2) an implied option contract[5] to continue to purchase this bundle of tickets in perpetuity (what Plaintiff refers to as "Renewal Rights"). (Pl. Br. at 1-2; Compl. ¶¶ 118-120.)[6] It is the latter contract that gives rise to Plaintiff's breach of contract claim and serves as the central feature in the parties' dispute. Accordingly, the Court will first address the alleged existence and breach of Plaintiff's Renewal Rights.

##### a.     Existence of Renewal Rights

The challenge in determining the existence of Plaintiff's alleged Renewal Rights rests in the novelty of Plaintiff's claim, and the absence of any directly analogous authority. Nonetheless, despite these doctrinal difficulties, the Court finds two cases persuasive authority: *Brotherson v. Prof. Basketball Club, L.L.C.*, 604 F. Supp. 2d 1276 (W.D. Wash. 2009) and *I.D. Craig Serv. Corp.*, 138 B.R. 490 (W.D. Pa. 1992). Collectively, these cases make clear that season ticket renewal rights can derive expressly from a written agreement or implied through course of conduct. Renewal rights are not, as Defendants' contend, an "unfounded premise." (Jets Br. at 11.) Thus, the first issue

---

[5] Plaintiff concedes that his contract is implied. (Strike Motion Reply Br. at 2.) "Contracts are 'express' when the parties state their terms and 'implied' when the parties do not state their terms." *Baer*, 392 F.3d at 616. Although both express and implied contracts are enforceable, "[t]here cannot be an implied-in-fact contract if there is an express contract that covers the same subject matter." *Id.*

[6] To be clear, "Renewal Rights" as a defined term means the renewal rights specifically alleged by Plaintiff. Renewal rights (lower case) is merely a general reference to a right to renew season tickets.

confronting the Court on Defendants' motions to dismiss is not whether renewal rights can exist at all, but whether they exist under the particular facts of this case.

In *Brotherson*, three basketball season ticket holders who renewed their tickets for the 2008 season with the option to renew for the 2009 and 2010 seasons brought an action against the Seattle Supersonics for breach of contract and consumer fraud after the team moved to Oklahoma before the start of the 2008 season. On the plaintiffs' motion for summary judgment, the court held that but for a factual issue regarding waiver, it would have found the team had breached its renewal rights with the season ticket holders. 604 F. Supp. 2d at 1290-91. *Brotherson* is noteworthy for three reasons. First, the court found that a ticket brochure could suffice to create renewal rights for season ticket holders. According to the court, the brochure was an express contract that represented an "unprecedented commitment" to season ticket holders. *Id.* at 1289; *accord In re Gorodess*, No. 01-17854 MSK, 2001 WL 1676939, at *5 (D. Colo. Dec. 31, 2001) (recognizing existence of renewal rights subject to terms and conditions). Second, the court found that the season ticket agreement, although a license, did not permit the team to revoke season tickets at will. The court reasoned that "if a reasonable consumer understood that he or she was buying nothing other than the right to be subject to the unfettered whim of [the defendant]," then no one would have entered into a season ticket contract. *Brotherson*, 604 F. Supp. 2d at 1287. Third, the court held that fans' renewal rights did not require further consideration. *Id.* at 1284 ("The parties need not make a separate valuation of the option in order for it to be enforceable.").

Similarly, in *I.D. Craig Serv. Corp.*, 138 B.R. 490 (W.D. Pa. 1992) the owner of the Pittsburgh Steelers objected to a bankruptcy trustee's motion to sell renewal rights to season tickets. Addressing many of the arguments put forth by Defendants in this case, the bankruptcy court granted

9

the trustee's motion based on a finding that season ticket holders had two distinct contractual interests, one in the game tickets themselves and the other in the right to renew the season tickets for the following year. *Id.* at 494. According to the bankruptcy court, the concept of renewal rights can be "illustrated by analogy to the interest that the holder of a liquor license enjoys." *Id.* The bankruptcy court characterized the season ticket holder's renewal rights as an "expectancy interest" as opposed to an option contract (as the *Brotherson* court did), but the overarching reasoning in both *I.D. Craig* and *Brotherson* was the same. Furthermore, the *I.D. Craig* court recognized that the season ticket holder's renewal rights were implied through course of conduct because the expectation of renewal was "created and fostered" by the Steelers. *Id.* at 502; *accord Kully v. Goldman*, 208 Neb. 760, 766 (Neb. 1981) (Reimer, J., dissenting) (17 years of renewing season tickets sufficient to create renewal rights).

Finally, the Court is also persuaded by *dicta* in *Charpentier v. L.A. Rams Football Co.*, 75 Cal. App. 4th 301 (Cal. Ct. App. 2000), which is in accord with *Brotherson*, and *I.D. Craig*. In *Charpentier*, a former season ticket holder alleged breach of contract and fraud against the Los Angeles Rams after the team moved from California to Missouri. *Id.* at 304. The court rejected the plaintiff's breach of contract claim. However, the court also suggested in *dicta* that the plaintiff could have exercised renewal rights had the team moved locally. *Id.* at 311 ("A reasonable Rams season ticket purchaser might have understood the contract tendered by the Rams to have promised a right to renew seats for games played . . . [at a] local venue . . . "). Once the Rams moved, however, "there was no local seat available to purchase and plaintiff's contractual rights left with them." *Id.*

Pursuant to *Brotherson* and *I.D. Craig*, Plaintiff has sufficiently alleged renewal rights for both Giants and Jets season tickets. For the past 24 years, Plaintiff has purchased six contiguous Giants season tickets located at Section 130, Row 8, Seats 21-26 in the Existing Stadium and four contiguous Jets season tickets located at Section 131, Row 20, Seats 5-8 in the Existing Stadium. (*Id.* ¶¶ 11-14.) At this stage of the litigation, this conduct demonstrates that Plaintiff may possess a valuable implied right to renew his season tickets at both the Existing Stadium and the New Stadium.

Defendants discount the applicability of *Brotherson* and *I.D. Craig* and instead rely heavily on *Yarde Metals, Inc. v. New England Patriots LP*, 64 Mass. App. Ct. 656 (Mass. App. Ct. 2005). In *Yarde*, the plaintiff brought breach of contract and equitable estoppel claims and sought a preliminary injunction against the New England Patriots after its season tickets were revoked. The appellate court acknowledged that the team's revocation of the tickets seemed "harsh, but it nonetheless affirmed denial of the plaintiff's preliminary injunction and dismissal of its case. *Id.* at 661. Reliance on *Yarde*, however, is largely misplaced because it is factually distinguishable on two accounts. First, unlike this case, the plaintiff in *Yarde* had its season tickets revoked for cause. 64 Mass. App. Ct. at 656. The plaintiff's agent was initially suspected of throwing bottles and then accused of using the women's bathroom. *Id.* at 656-57. Thus, even if the plaintiff enjoyed renewal rights to Patriots season tickets they would not and could not reasonably extend to "thwart[ing]" the Patriots's ability to govern fans' behavior. *Id.* at 660. Second, and even more importantly, the plaintiff in *Yarde* received an "express disclaimer[] of any right of the purchaser to renew in subsequent years . . . ." *Id.*; *see also Harrell v. Phoenix Suns Ltd P'ship*, 73 F.3d 218, 219 (9th Cir. 1996) (express disclaimer). By contrast, in this case Defendants have submitted only recent and

periodic disclaimers that post-date Plaintiff's season tickets by more than a decade. (Hernandez Decl. Ex. 5 (disclaimer dated 2009); Solomon Decl. Ex. C (disclaimer dated November 2005); Hernandez Strike Decl. Ex. 1 (disclaimer dated 1999).) It would be inappropriate to determine on a motion to dismiss whether these notices defeated Plaintiff's renewal rights when discovery of all documents has not been conducted. It is an issue of fact as to whether Plaintiff waived or forfeited his renewal rights. *Brotherson*, 604 F. Supp. 2d at 1290-91.

Defendants also argue that the express licensing agreement on the back of individual tickets trumps any renewal rights implied through the parties' conduct. (Jets Br. at 12-13; Def. Reply Brief at 3-4.) According to Defendants, "the purchase of a ticket creates nothing more than a revocable license." (Jets Br. at 13.) Defendants argument, however, assumes that the licensing agreement on individual tickets and renewal rights relate to the same subject matter. *See generally Baer*, 392 F.3d at 616. The licensing agreement on the back of individual tickets deals only with an individual game; it says nothing of the separate right to renew season tickets to all games. *See I.D. Craig*, 138 B.R. at 494 ("[T]he conclusion does not follow that, because each single ticket is a revocable license, [the team] can either deny [a season ticket holder's] request to transfer his season ticket holder status or refuse to recognize that status in his transferees."). Thus, the licensing agreement on the back of individual Giants and Jets tickets may not bear upon long term renewal rights.

Lastly, Defendants argue that Plaintiff has failed to pay any consideration for his renewal rights. (Jets Br. at 14-15.) As evidence of this, Defendants note that Plaintiff admits that his season ticket price "merely reflected the price charged for a ticket for each seat on a per game basis and then multiplied by the number of home games . . . ." (Jets Br. at 14-15 (alterations, internal quotations and ellipse omitted).) However, as the *Brotherson* court noted, the law "requires no separate

12

consideration for an option contained within a broader contract." 604 F. Supp. 2d at 1285. According to the court, "[w]hen an option agreement is a subsidiary part of a larger transaction . . . the consideration for the option itself is rarely a definitely determinable portion of what the option holder gives to the other party." *Id.* (quoting *Metro. Park Dist. v. Griffith*, 723 P.2d 1093, 1099 (1986)); *accord Gillman v. Billy Mfg. Corp.*, 286 N.J. Super. 523, 531 (App. Div. 1996). Thus, Plaintiff's renewal rights may not require additional consideration.

Although Plaintiff alleges renewal rights for purposes of Defendants' motions to dismiss, it does not necessarily follow that Plaintiff states a claim for breach of contract. As the *Charpentier* court acknowledged, even where renewal rights can be recognized, sports franchises are entitled in many respects as a matter of law to run their teams as they see fit. 75 Cal. App. 4th at 311. Stated another way, "[i]t is common knowledge that professional sports franchisees have a sordid history of arrogant disdain for the consumers of the product." *Id.* at 314. Thus, as set forth below, the Court must also determine whether the imposition of PSLs constitutes a breach of Plaintiff's renewal rights.

### b.   Breach of Renewal Rights

Plaintiff alleges that Defendants breached his Renewal Rights in at least two respects: (1) the additional fee required to purchase PSLs; and (2) the default terms imposed by PSLs. (Compl. ¶¶ 15-19.) The Court cannot determine at this stage of the litigation whether these allegations fail as a matter of law. As Defendants correctly pointed out in both their briefs and during oral argument, Plaintiff is certainly not entitled to impose cost controls on ticket prices. Nor will the Court accept Plaintiff's invitation to act as an arbiter of Defendants' business practices. Defendants must ordinarily be permitted to increase ticket prices to keep pace with inflation, absorb the cost of high

salary talent or, as in this particular case, defray the costs of building a new stadium. *Cf. Wichita State Univ. Intercollegiate Athletic Ass'n, Inc. v. Marrs*, 28 P.3d 401, 402 (Kan. App. Ct. 2001) ("[P]laintiffs could reasonably require the defendant to contribute to the scholarship fund in consideration for renewing his season tickets."). But at the same time, the Court cannot reconcile Plaintiff's renewal rights with Defendants' business interests on a motion to dismiss. Through discovery, the exact parameters of Plaintiff's renewal rights (if any) will be defined, and only then can a determination be made as to whether those renewal rights have been breached by the imposition of PSLs. Thus, Defendants' motions to dismiss Plaintiff's breach contract claim is denied.

### 2. Unjust Enrichment

Count four of Plaintiff's complaint seeks relief for unjust enrichment. The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. *Assocs. Comm. Corp. v. Wallia*, 211 N.J. Super. 231, 244 (App. Div. 1986). "To recover under this doctrine, the plaintiff must prove that the defendant 'received a benefit, and that retention of the benefit without payment therefor would be unjust.'" *Id.* (quoting *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 109 (App. Div.1966)).

Plaintiff's unjust enrichment claim must be dismissed for two reasons. First, Plaintiff's brief did not oppose dismissal of unjust enrichment. (Giants Br. at 18-21.) Plaintiff occasionally mentions the term "unjust enrichment" in his brief. (Pl. Br. 1-5, 8.) But his analysis of equitable issues is exclusive to an equitable estoppel claim, which is not pled in the complaint. (*Id.* at 14-16.) There is no discussion of how Plaintiff satisfies any of the elements of his claim. Second, Plaintiff fails to sufficiently allege how Defendants have unjustly enriched themselves at Plaintiff's expense.

Thus, Plaintiff's unjust enrichment claim fails as a matter of law.

### 3. Consumer Fraud Claims

Plaintiff broadly alleges "Violations of State Consumer Protection Acts" in Pennsylvania, Connecticut, New York, Florida and California, but only makes specific reference to consumer fraud claims under New Jersey law. As to the other state statutes, Plaintiff alleges that "most, if not all, other states are similar to New Jersey's Consumer Fraud Act and all contain provisions similar to N.J.S.A. []56:8-2[.]" (Compl. ¶ 91.)[7] The New Jersey Consumer Fraud Act ("CFA") imposes liability for "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . . ." N.J.S.A. 56:8-2. In essence, the count describes how two very wealthy Defendants (Giants and Jets) unconscionably deceived a rather wealthy Plaintiff (Oshinsky).

In order to state a claim pursuant to the CFA, a plaintiff must plead with particularity[8] three elements: "(1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the

---

[7] Plaintiff's invitation to consider "violations of state consumer protection acts" without individually citing to these statutes or alleging facts to support claims pursuant to these statutes is nothing more than a sweeping legal conclusion insufficient to satisfy the pleading requirements of the Federal Rules of Civil Procedure. *Twombly*, 550 U.S. at 555. Indeed, as evidence of Plaintiff's failure to satisfy even notice pleading for these foreign jurisdictions, Defendants "assume for purposes of this motion that the New Jersey Consumer Fraud Act applies to all consumer claims, even though Plaintiff's Complaint cites to several other acts . . . ." (Giants Br. at 9.) Thus, the Court will only analyze Plaintiff's consumer fraud claim under New Jersey law. Any consumer protection claims brought pursuant to other states' statutes are dismissed.

[8] *Parker v. Howmedica Osteonics Corp.*, No. 07-2400, 2008 WL 141628, at *3 (D.N.J. Jan 14, 2008).

defendants' unlawful conduct and the plaintiff's ascertainable loss." *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389 (2007) (ellipses and internal quotations omitted).  An unlawful practice, the first element of a CFA claim, falls into one of three categories: (1) affirmative acts; (2) knowing omissions; and (3) regulatory violations. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994) (citing N.J.S.A. 56:8-2; N.J.S.A. 56:8-4).

Plaintiff's allegations fail to state a claim under the CFA.  Plaintiff's CFA claim rests primarily on Defendants' alleged omissions of the material terms of the PSLs.  Plaintiff alleges that Defendants have yet to determine the mechanics of the PSL exchange that will supposedly be available to PSL owners following the 2010 season; and if the Giants and Jets fail to establish this exchange, Plaintiff alleges, his PSLs may decrease in value. (Compl. ¶ 83.)  Plaintiff also conjures up that Defendants could arbitrarily increase future ticket prices so as to force either the forfeiture or resale of PSLs. (Compl. ¶ 82; Transcript of Motion Hearing ("Tr.") 45:9-12.)  Plaintiff's allegations, however, are speculative and without basis in the facts of the case.  Under the CFA, a knowing omission requires an intent to defraud. *Cox*, 138 N.J. at 18.  Such intent is not shown in the complaint.

To the extent that Plaintiff's CFA claim rests on affirmative acts it must also be dismissed. One of the affirmative acts alleged is NFL Commissioner Roger Goodell's public statement "that he considers the purchase of PSLs to be 'good investments.'" (Compl. ¶ 78.)  Plaintiff alleges this assertion is a misstatement, but Commissioner Goodell is not an agent of Defendants and his statement can not be legally imposed upon the Giants or Jets.  Thus, Plaintiff has failed to allege with particularity any misstatements regarding PSLs attributable to Defendants.

### 4. Antitrust Claim

The sixth count of Plaintiff's complaint alleges violations of § 1 of the Sherman Act, 15 U.S.C. § 1. Specifically, Plaintiff alleges that Defendants illegally restrained trade in two respects: (1) illegally tying the purchase of a PSL to the purchase of a 2010 season tickets; and (2) colluding in the price and maintenance of PSLs.

A tying arrangement is 'an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier.'" *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 461 (1992) (quoting *N. Pacific R. Co. v. United States*, 356 U.S. 1, 5-6 (1958)). "The first inquiry in any § 1 tying case is whether the defendant has sufficient market power over the tying product, which requires a finding that two separate product markets exist and a determination precisely what the tying and tied products markets are." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 443 (3d Cir. 1997). To demonstrate separate product markets, Plaintiff analogizes renewal rights to stock options. (Pl. Br. at 36.) Stock options and underlying securities are sold on different markets and constitute different financial products. PSLs and season tickets will be sold on different markets after the 2011 season. Therefore, Plaintiff deduces, renewal rights and season tickets constitute "distinct" products for purposes of his Sherman Act claim. (*Id.*)

Plaintiff fails to satisfy the first element of his tying claim. As a preliminary matter, Plaintiff does not allege any facts, which demonstrate that renewal rights and season tickets are distinct products. Without these necessary facts, Plaintiff's allegations amount to nothing more than a legal conclusion insufficient to state a claim. *Twombly*, 550 U.S. at 555. In addition to this pleading deficiency, Plaintiff relies on a stock option analogy but it does not equate to the situation here. PSLs

and season tickets are different. PSLs provide a fan with the option to purchase season tickets with renewal rights and season tickets are a bundle of individual tickets that provide access to games. However, because renewal rights and PSLs perform different functions does not mean that they constitute "distinct" markets for purposes of the Sherman Act. *Compare Coniglio v. Highwood Servs., Inc.*, 495 F.2d 1286, 1292 (2d Cir. 1974) (preseason and regular season tickets found to be separate product markets).

Plaintiff's tying claim must also be dismissed because Plaintiff has not pled any plausible restraint on trade. For a tying claim to violate the Sherman Act, a plaintiff must show how the use of economic power in one market is used to "restrict competition on the merits in another." *N. Pacific R.*, 356 U.S. at 11. Plaintiff cannot make this showing because there is no market to restrain. The Giants and Jets have a monopoly on the market, the New York metropolitan area. *Cf. Coniglio*, 495 F.2d at 1291-92 (holding that the Buffalo Bills did not restrict competition in tying preseason and regular season tickets because they had a monopoly over the Buffalo football market); *Driskill v. Dallas Cowboys Football Club, Inc.*, 498 F.2d 321, 323 (5th Cir. 1974) ("[T]he Cowboys have a complete monopoly in the tied market -- preseason professional football games in Dallas -- and there can thus be no adverse effect on any competitors, even if a tying scheme exists."). Thus, Plaintiff's tying claim must be dismissed.

Defendants' second alleged violation of the Sherman Act is collusion in the price and maintenance of PSLs. According to Plaintiff, "Jets and Giants Defendants jointly agreed (and colluded) to establish, market, and sell PSLs to the Plaintiff and Class in order to help Defendants jointly finance the cost of constructing the New Stadium." (Pl. Br. at 40.) Nonetheless, this allegation fails as a matter of law. As Defendants point out and as *Twombly* makes clear, it is not

enough to simply conclude that an agreement exists. 550 U.S. at 557 ("[S]uch a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made."). Plaintiff offers no facts of any alleged agreement. In fact, the only facts alleged appear to actually contradict the suggestion of an agreement. (Compl. ¶ 16 (Giants and Jets charge different prices for PSLs).) Thus, Plaintiff's collusion-based Sherman Act claim must be dismissed.

### 5. Remaining Claims

Plaintiff also pleads injunctive relief and declaratory judgment as separate counts in the complaint. In light of the Court's decision regarding the allegations of Defendants' breach of contract, the Court will not dismiss Plaintiff's injunctive relief and declaratory judgment counts at this time; and will impose a reasonable remedy (if any) as the facts deem fit.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted in part and denied in part, and Plaintiff's motion to strike is granted in part and denied in part. Furthermore, based upon the representations made at oral argument, the Court will permit Plaintiff to proceed with limited discovery on his contract claim on an expedited basis. Within 60 days of the date of the Court's order, Plaintiff may conduct three depositions of Defendants, and the parties may serve interrogatories and other discovery related exclusively to Plaintiff Harold Oshinsky's renewal rights. (*See* Tr. 47:23-48:15.)

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

November 17, 2009